WILLIAM F. MORITZ *vs.* CITY OF ST. PAUL.

Argued Dec. 23 1892.  Decided Feb. 24, 1893.

**Mortgagee when Entitled to Damages for Change of Street Grade.**

The defendant city instituted proceedings to change the established grade of a street, in accordance with its charter, upon which certain mortgaged premises abutted. An assessment of damages therefor was completed after a sale of the premises on foreclosure to the mortgagee for the full amount of the debt. No redemption was made from the foreclosure sale, and after the expiration of the time for redemption the mortgagee, who had thus become the owner, or his assignee, sued for the recovery of the damages awarded. *Held*, that he was entitled to recover.

**Same—After Foreclosure of the Mortgage.**

The damages awarded after the foreclosure sale became a substitute for so much of the property as was taken or appropriated for public use.

**Charter of St. Paul Construed.**

Charter construed as providing for an assessment of damages for injury to *the property*, leaving the question as to who shall be entitled to receive such damages to be determined in accordance with the general principles of law.

**Damages for Change of Grade, When Due.**

The charter providing that the city shall not take possession of the property until the money for the payment of damages shall have been collected by means of special assessments, *held*, that the fact that the city had actually entered upon the work of changing the grade is effectual as a waiver of its right to postpone the payment of the damages awarded until such collections should be made. The city thus assumed an immediate responsibility.

Appeal by defendant, the City of St. Paul, from an order of the District Court of Ramsey County, *Cornish*, J., made June 11, 1892, denying its motion for a new trial.

On April 24, 1888, Henry Schroeder was the owner of lot nine (9) in block fifteen (15) in Ashton & Scherburne's Addition to St. Paul, situated on the corner of Fairview and Mt. Airy streets. On that day he mortgaged the lot to Anna T. E. Kirtland to secure the payment of $1,700 and interest. Default was made in the payment of the debt, and the mortgage was foreclosed under a power of sale contained therein, and the lot sold February 19, 1890, to the mortgagee for $1,988.86, the amount then due on the mortgage, and costs; and she received the usual certificate of sale. She assigned the certificate February 14, 1891, to the plaintiff, William F. Moritz, and on May 19, 1891, she made to him a deed of the lot, and assigned to him all her right to any damages arising out of a change of the grade of said streets. No redemption from the foreclosure sale was made, and plaintiff became the owner of the lot.

On July 7, 1888, Schroeder sold and conveyed the lot to John F. and Thomas J. Gehan, subject to the mortgage. On December 17, 1889, the Common Council of the City of St. Paul resolved to change the grade of said streets according to the report of the Board of

Public Works, and on March 12, 1890, that board assessed the damages and benefits resulting to property on account of such change of grade. Notices were given, and on April 7, 1890, the assessments were duly confirmed; $513.60 damages were allowed above all benefits to the lot. Plaintiff on June 25, 1891, demanded this sum of the City, and it refused to pay it to him, and he brought this action to recover of the City the amount, with interest. The action was tried before the court without a jury, and on March 30, 1892, findings were filed and judgment ordered for plaintiff for the amount. The City moved for a new trial, and being denied, appealed.

*Daniel W. Lawler*, City Attorney, and *H. W. Phillips*, for appellant.

At the time of the confirmation there were two separate and distinct interests in this real estate; that of the owner of the fee, and that of the owner of a mortgage lien. To the one, there was an express award of damages for the injury to his interests; while for the injury to the interests of the other there was no award of damages whatever. The provisions of the charter require that the Board of Public Works shall ascertain and assess the damages and recompense due the owners of the land, respectively. Sp. Laws 1887, ch. 7, p. 335. A mortgagee is not an owner under these provisions. If he is to be considered an owner, then the condemnation proceedings are invalid as to the plaintiff, because there was no award of damages for the injury occasioned to the interest of the mortgagee. The resolution of the Common Council changing the grade was formally and finally adopted some two months before the mortgage foreclosure sale, and the plaintiff stands in the position of a purchaser at the mortgage foreclosure sale, having purchased the property in its then condition with the grade actually and formally changed by the Common Council. *Brennan* v. *City of St. Paul*, 44 Minn. 464; *Warwick Inst.* v. *City of Providence*, 12 R. I. 144; *Knoll* v. *New York, C. & St. L. Ry. Co* , 121 Pa. St. 467.

The provisions of 1878 G. S. ch. 31, regulating condemnation proceedings for acquiring privileges for erecting dams and mills, are almost exactly similar to the charter of this City with respect to the question under consideration. *Siguan* v. *Rhoades*, 24 Minn. 25.

*Williams, Goodenow & Stanton,* for respondent.

The only question that arises here is to whom belongs the money allowed as damages to the property by reason of the change of the grade of the streets. The question of damage itself is admitted by the pleadings, and is not before the court. The City claims that the amount allowed should be paid to the Gehans. At the time the assessment was made and confirmed, the property had been sold on foreclosure of the mortgage, and bid in by the grantor of the plaintiff. When one purchases at a foreclosure sale, he does not become a mere assignee of the mortgage, but takes the interest that the mortgagor had at the date of the mortgage, subject to the right of redemption. *Tinkcom* v. *Lewis,* 21 Minn. 132; *Whitney* v. *Huntington,* 34 Minn. 458; *Stout* v. *Keyes,* 2 Dougl. 184.

An examination of the dates, as given in the statement of facts, shows that neither the assessment nor the confirmation had been made prior to the foreclosure sale. The assessment had not been made nor had the change of grade taken place. The confirmation, which was on April 7, was the date at which the proceedings were completed. The Common Council may annul any order for a change of grade, at any time prior to the confirmation of the assessment for such change of grade by the Board of Public Works. *Brennan* v. *City of St. Paul,* 44 Minn. 464.

The change of grade having been made after the purchase at the foreclosure sale, the damages allowed by the City were given for depreciation of the property bought by the purchaser at the foreclosure sale. They represent the depreciation caused by the change of grade, and rightly belong to the purchaser at the sale and her grantee. The trial judge has expressly found that the assessment of damages was made to the *property.* Even had the proceedings been that the assessments should be to the *owner,* the City would have been in no different or better position, for the word "owner" in such connection does not necessarily refer simply to the holder of the fee, but to one having an interest that might be injured by the damage to the property. This is the rule laid down by all of the text-books. Lewis, Em. Dom. §§ 324, 335; Jones, Mortg. § 708; Elliott, Roads and Streets, § 207; *South Park Com'rs* v. *Todd,* 112 Ill. 379; *In re John*

*and Cherry Streets, N. Y.,* 19 Wend. 659; *Utter* v. *Richmond,* 112 N. Y. 610; *Bank of Auburn* v. *Roberts,* 44 N. Y. 193; *Astor* v. *Hoyt,* 5 Wend. 603.

So far has the justice of protecting the mortgagee been carried that in some states, where it is provided that compensation be made to the "owner," the courts have held that the word "owner" covered the mortgagee. *Severin* v. *Cole,* 38 Iowa, 463; *Platt* v. *Bright,* 29 N. J. Eq. 128; *Gimbel* v. *Stolte,* 59 Ind. 446; 15 Am. & Eng. Encyc. of Law, 818; *Parks* v. *City of Boston,* 15 Pick. 198; *Ellis* v. *Welch,* 6 Mass. 246; *Hagar* v. *Brainerd,* 44 Vt. 294; *Reese* v. *Addams,* 16 S. & R. 40.

DICKINSON, J. This is an action to recover from the defendant city the sum of $513.60, which had been assessed and allowed as damages for a change of the grade of two streets upon which abutted the land with respect to which such damages were allowed.

In April, 1888, one Schroeder owned this land. At that time he mortgaged it to one Kirtland, and thereafter (July, 1888) he sold and conveyed it to Gehan. In proceedings for the foreclosure of the mortgage the land was sold February 19, 1890; the mortgagee, Kirtland, being the purchaser, and the amount bid therefor being the full amount of the mortgage debt. No redemption' was ever made, and, upon or after the expiration of the period for redemption, Kirtland sold and conveyed the land to this plaintiff, transferring also to him the right of the former in respect to the money here sought to be recovered.

Prior to the foreclosure sale, proceedings had been instituted for a change of the grade of the streets; and the common council of the city had adopted a resolution that the grade be changed, and had referred the matter to the board of public works, pursuant to the charter, for an assessment of damages. The assessment was not made by that board until March 12, 1890, (after the foreclosure sale,) and it was not completed by confirmation until April 7, 1890.

Upon trial in the district court the plaintiff was held entitled to recover the damages which had been awarded for the change of grade. The defendant appeals from an order refusing a new trial.

It is first contended on the part of the defendant that the interest of the mortgagee, Kirtland, in the property was not such as to entitle her or the plaintiff, who has succeeded to her rights, to recover the damages thus awarded. We hold to the contrary, and in accordance with the decision of the district court. The charter of the city does not permit any change of an established street grade to be consummated and take effect except upon the condition precedent of the making and confirmation of an assessment of the damages which may result therefrom, and it authorizes the common council to annul any order for a change of grade at any time prior to the confirmation of such assessment. Sp. Laws 1887, ch. 7, p. 366. Hence the resolution of the common council prior to the foreclosure sale, that the grade be changed, did not affect any change, nor did it alter the situation of the property. No change of grade was effected, nor did it become certain that any change would be made, nor did the owner of the land, or any one interested therein, become entitled to receive the damages in question until the assessment had been confirmed, which was after the foreclosure sale. The mortgagee became the purchaser on foreclosure subject to the right of redemption, taking the property as it existed at that time, with the street grade still unchanged, and it being, moreover, uncertain whether any change would ever be made. She took the land in that situation, and when afterwards, upon the confirmation of the assessment of damages, the change of grade became effectual, the estate which she had purchased, and as she had purchased it, became *then,* not before, impaired or burdened to the extent that the change of grade would affect it. The damages assessed are not only to be here regarded as the measure of that impairment of the estate purchased, but they become a substitute for what was thus taken or appropriated by the public from such estate, and the mortgagee who had thus purchased was entitled to receive such damages; they being less than the amount of the mortgage debt. Our decision in *Whitney* v. *Huntington,* 34 Minn. 458, (26 N. W. Rep. 631,) is controlling upon this point.

It is further said, in defense, that under the charter the damages were assessed only in favor of the "owner" of the property, and that

the mortgagee, after foreclosure sale, and before the expiration of the period for redemption, was not the owner. The assessment was not in terms made in favor of the owner. The special law above cited (section 3, tit. 3) provides for the assessment of the damages "*to property* occasioned by such alteration." It contemplates, as seems apparent, the awarding of damages for the entire injury to the *property* resulting from the change of grade; and while, in that part of the law which is referred to in section 4 as indicating the procedure for the making of the assessment, (title 1, p. 335, § 7 *et seq.*,) the words "owner" and "owners" are used to designate the parties interested, and in whose favor the assessment is to be made, those words must be construed in a comprehensive sense, as including all persons having interests in the land, or who are entitled to the compensation to be awarded for the injury to the property. *Parks* v. *City of Boston*, 15 Pick. 198; *Watson* v. *New York Cent. R. Co.*, 47 N. Y. 157, 161, 162; *Severin* v. *Cole*, 38 Iowa, 463; *Gerrard* v. *Omaha, N. & B. H. R. Co.*, 14 Neb. 270, (15 N. W. Rep. 231;) Lewis, Em. Dom. § 335. Such a construction of the law is necessary to carry into effect its very obvious purpose; that is, of awarding compensation for the injury to *the property* caused by a change of the established grade. Upon what persons that injury would fall, and hence who should receive the compensation therefor, would depend upon the circumstances of each case, as respects the title, and the interests of various persons in the property. It is very likely to be some other person than the owner of the legal estate. The injury to him may be really only nominal, as where he has sold the property, and received the price, but has not yet conveyed the legal title. The purpose of the statute being to award compensation for the injury to the property, it is to be supposed that it was intended that the persons really suffering that injury should receive the compensation awarded therefor, rather than that the owner of the legal title should receive the entire damages awarded, even though the injury might affect only other persons, who alone, under the general principles of law and equity, would be entitled to whatever compensation should be allowed. It must have been intended that the general principles of law should

control the determination as to who might be entitled to receive the damages awarded for the injury to the property.

Finally, the point is made that the damages awarded are to be raised by assessments upon property benefited by the alteration of the grade, and that no action will lie against the city to recover the same, at least until the money has been còllected by the city by means of such assessments. It does not appear, unless by inference, whether or not the money has been thus collected. Assuming that this is the correct construction and effect of the law, we are still of the opinion that the circumstances of this case are such that the action is maintainable. We may accept as well founded the claim on the part of the city that, by force of section 4 of title 3 of the law above cited, the provisions of title 1 of the same chapter (prescribing, among other things, the proceedings for the condemnation of land for public use) are made applicable to proceedings for a change of street grades. Section 18 of the latter title provides that the city shall not "enter upon, take possession of, and appropriate the property condemned" until the money is collected, and ready, in the hands of the treasurer, to be paid over to the parties entitled to damages for the property condemned, nor until the treasurer shall have published a notice thereof as specified. It was alleged in the complaint that the city, by its proper officers, changed the established grade, and "proceeded to grade the said streets, whereby the premises aforesaid were greatly damaged," etc. The regrading of the street in conformity with the changed grade would be an appropriation of the property of the adjacent proprietor, the owner of the soil, unauthorized, under the law referred to, except under the conditions there prescribed. This allegation of the *actual* change of the grade is not effectually denied in the answer. The general and bare averment that the defendant has not knowledge or information sufficient to form a belief as to the truth of the allegations of the complaint does not avail with respect to the alleged conduct of the defendant, concerning which, presumably, it must have knowledge. Hence we take the alleged fact to be undisputed. The city, having thus appropriated the property, by actually changing the

grade on the ground, should be deemed to have waived its right to postpone the payment of the damages until it should have collected the funds by means of special assessments, and to have elected to become immediately responsible.

Order affirmed.

(Opinion published 54 N. W. Rep. 370.)