ST. GEORGE R. FITZHUGH *vs.* DULUTH CITY.

Argued July 20, 1894. Reversed Aug. 7, 1894.

No. 8693.

**Collateral attack upon a judgment for city assessments.**

*Held,* the omission to establish the grade of a street is an irregularity which does not go to the jurisdiction of the District Court to enter a tax judgment to recover a special assessment made under the charter of Duluth for the purpose of grading and improving such street, and such judgment cannot be attacked in a collateral proceeding on account of such omission.

. Appeal by defendant, Duluth City, from a judgment of the District Court of St. Louis County, *Charles L. Lewis,* J., entered February 6, 1894, decreeing that certain tax judgments obtained against the real estate of the plaintiff, St. George R. Fitzhugh, are void.

*Henry F. Greene,* and *Page Morris,* for appellant.

*McCordic & Crosby,* for respondent.

CANTY, J. This is the statutory action to determine adverse claims to real estate. It is brought against the city of Duluth to test the validity of certain special assessments of taxes on the property in question for the purpose of grading and improving certain streets, and to test the validity of certain tax judgments entered for such taxes.

On the trial, the court below found against the validity of the assessment proceedings and tax judgments, and, from the judgment entered thereon, defendant appeals.

The assessment proceedings and tax judgments are attacked on the ground that no grades were established for the streets before the assessment proceedings were instituted, and it is claimed that plaintiff is not estopped or concluded from urging this omission, either by the order of the District Court confirming the assessment, or by the tax judgments, but that the omission to establish such grade is fatal to all of these proceedings.

The city charter (Sp. Laws 1887, ch. 2, subch. 5, § 9, p. 78) provides: "Before proceeding to make any assessment for any improvement

mentioned in section 5 said board of public works shall give ten days' notice in the official paper of said city of the time and place of the meeting for the purpose of making such assessment, in which notice they shall specify what such assessment is for and the amount to be assessed."

Section 10, as amended by Sp. Laws 1891, ch. 55, § 18, p. 627, provides that, when the board shall have completed their assessment, "they shall cause like notice to be published in the official paper of said city, that at a time specified in said notice" an application will be made to the District Court, or the Judge thereof, to confirm such assessment, that the owner may appear and file objections in writing, and it shall be the duty of the district court to hear such objections. "When the District Judge shall make an order confirming the assessment which shall be attached to or endorsed upon said assessment, the assessment roll and all things contained in said roll shall be deemed *res judicata*." This section then provides for the collection of the tax, prescribes a time when the tax uncollected shall become delinquent, and provides for publishing a notice of application for a tax judgment thereon, and for filing the delinquent list with the clerk of the District Court, and, further, provides that the owner of any property "may appear at said court at the time designated in said comptroller's notice and file objection in writing to the recovery of judgment against his property, but no objection shall be interposed or sustained in relation to any matter occurring prior to the confirmation of the assessment by the court as hereinbefore set forth." .

The tax became delinquent, the tax judgments were entered pursuant to these provisions, and it is not claimed that there were any irregularities or defects in the proceedings for obtaining these tax judgments, but the defects urged are in the prior proceedings as aforesaid.

It will be seen that section 10 attempts to conclude the property owner from objecting to the regularity of the tax proceedings by two adjudications of the court,—one, the order confirming the assessment, and the other, the tax judgment,—and each is the final order or judgment entered in a proceeding *in rem*.

The first of these adjudications—the order confirming the assessment—is attacked on the ground that the statute does not provide

proceedings sufficient to constitute due process of law as a proceeding *in rem,* either as to seizure of the *res* or as to notice to the public.

The statute does not provide for filing in court, or with the judge, either before or after giving notice of the application, any petition or anything else containing a description of the property to be condemned; but section 10 seems to contemplate borrowing the assessment roll from the board of public works at or before the time of hearing the application for confirmation, and returning it to the board after the order of confirmation has been attached to or indorsed upon it.

Neither does the statute require the notice of the application to contain a description of the property.    Section 10 provides that the board "shall cause like notice" to that provided in section 9 to be published.    The only notice provided for by section 9 is one which "shall specify what such assessment is to be for and the amount to be assessed."    It does not seem to require any description of the property on which the assessment is to be made to be given.    Thus neither on file in the court nor in the notice published need there be any description of the property attempted to be seized.

Whether or not these proceedings are sufficient to make a valid judgment *in rem,* which shall conclude and estop the owner of the property from afterwards taking advantage of defects and irregularities in the assessment proceedings, it is not necessary here to decide; but, for the purpose of this case, we will assume that the proceedings for confirmation are not sufficient for this purpose, and that the order of confirmation will not thus conclude or estop the owner.

Respondent takes this position, and then urges that section 10 provides that, on making the order of confirmation, "the said assessment roll, and all things contained in said roll, shall be deemed *res judicata;*" and that this and the part of the amendment of 1891 above quoted preclude the property owner from objecting to any omissions or irregularities, prior to the confirmation of the assessment, when he is cited to defend against the application for the tax judgment; that, therefore, defects and irregularities in the proceedings prior to such confirmation are not *res judicata* by such judgment; that it is unconstitutional to make such judgment *res judicata* as to such defects and irregularities without giving the property owner a chance to be heard as to them.

It may be that some of the provisions for making and collecting these special assessments are void, but it cannot be held that all of the provisions relating to that matter are void, and that all of the machinery devised for assessing and collecting these taxes must be swept away. It is, at most, a case where a part of the statute must be held valid and a part void.

In such a case it is sometimes difficult to separate the void from the valid. The part allowed to stand must not be dependent on the part held void, but must be complete in itself, and capable of being executed in accordance with the legislative intent.

No arbitrary line is to be drawn between any one section, proposition, or sentence, and another, in separating the void from the valid, but the legislative intent must guide in finding the line of separation, and even the same provision may be void for some purposes and valid for others.

If, for the reasons stated, the order of confirmation is not conclusive as a judgment *in rem*, it will still stand as a necessary step in the tax proceedings; but the clause declaring it *res judicata* as to all things contained in the assessment must fall. The clause in the amendment of 1891 providing that, on the application for judgment, "no objections shall be interposed or sustained in relation to any matter occurring prior to the confirmation of the assessment roll," is merely another way of stating the conclusive character of such confirmation. It is not intended by this clause to lessen the effect of the tax judgment as a conclusive adjudication, but to increase the effect of the confirmation as such. It is founded on the supposed conclusive character of the order of confirmation, and, if that character falls, this clause must fall also. If this provision was the only one to be rejected, it could not be done, but would then have the effect claimed for it by respondent; but it does not stand alone or fall alone. If it falls, it is because it is so founded upon, and connected with, other unconstitutional provisions, as to fall with them.

It is clear that by providing for two adjudications against the property, at different stages of the proceedings, the legislature intended to make doubly sure that all the objections of the owner were precluded. It certainly was not the legislative intent that, if one of the bars thus erected should fall, the other should fall also. Each adjudication is a separate step, and the legislature intended it to

stand alone, and, if the prior adjudication failed, that the subsequent one should cover it. If, as a binding and conclusive adjudication, the order of confirmation falls, the provisions requiring it to be respected as such, fall also, and, on the application for judgment, the property owner has a right to object to matters occurring before the order of confirmation. The judgment, then, is binding and conclusive, unless the omission complained of goes to the jurisdiction of the court. The failure to establish the grade of the street before instituting the assessment proceedings is a serious omission. *State* v. *Judges of District Court*, 51 Minn. 539, (53 N. W. 800, and 55 N. W. 122.) And it was held in that case that it was a sufficient objection to the confirmation of the assessment. But that was in a direct proceeding; that is a collateral attack on the judgment. In our opinion, the very purpose of procuring a tax judgment is to cut off objections on account of such irregularities as this. It is well settled in this state that such an irregularity does not go to the jurisdiction of the court, and no case is cited which so holds. The case last above cited is not authority for such a proposition.

The judgment appealed from should be reversed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 1041.)