THOMAS KEOUGH and Another v. CITY OF ST. PAUL.[1]

October 29, 1896.

Nos. 9972—(14).

**Municipal Corporation — Street Grading Contract — Ultra Vires — Gradient Lines—Condemnation.**

A contract for the grading of a street in the city of St. Paul, entered into between the city and a contractor, is not ultra vires simply because the council has omitted to establish gradient lines for the street prior to the passage by the council of an order directing that such street be graded. Nor is such contract ultra vires simply because condemnation proceedings, through which the city has attempted to acquire an easement for slopes along such street, have not been fully consummated prior to the passage of such order.

Appeal by defendant from an order of the district court for Ramsey county, Brill, J., overruling a demurrer to the amended complaint.    Affirmed.

*E. J. Darragh* and *Hermon W. Phillips*, for appellant.

*Ambrose Tighe* and *John W. Lane*, for respondents.

COLLINS, J.    Appeal from an order overruling a general demurrer to an amended complaint, which contains many allegations purposely inserted that the views of this court might be obtained upon the principal question of law, without first trying the questions of fact.

From these allegations it appears that, prior to any of the proceedings now before us, a public street had existed in the city of St. Paul known as "East Third," running from Earl street easterly to White Bear avenue, 1½ miles.    From this avenue to the city lim-

1 Reported in 68 N. W. 843.

its easterly was 1 mile, and the intervening land was owned by one Hennessy. In January, 1891, proceedings were duly instituted by the city authorities to lay out and extend East Third street from the avenue, across the Hennessy land, to the easterly city limits. An assessment for the purpose was had May 11, 1891, in accordance with the city charter, and this was confirmed by the board of public works. From this assessment, Hennessy appealed May 20, to the district court; and thereupon, July 7, the city gave a bond which, under its charter, gave it the right to enter upon the property sought to be acquired, notwithstanding the appeal. July 17, upon a petition presented to the council, and referred to the board of public works, proceedings were duly commenced to secure the grading of East Third from Earl street to the city limits, $2\frac{1}{2}$ miles. The city instituted proceedings, August 18, to condemn an easement for slopes in the land abutting on East Third street along its entire length, and, of course, across the Hennessy land, and an assessment therefor was made, the same being confirmed December 14. From this confirmation Hennessy appealed, December 23, to the district court. February 11, 1892, the city filed another bond of the character of that filed in July, 1891. A final order, directing the grading of East Third street from Earl street to the city limits, was passed August 27, 1891. January 14, 1892, the board of public works advertised for proposals for the grading, and on the 25th eight bids were opened, plaintiffs' being the lowest. The grading was thereupon awarded to plaintiffs, and a contract duly entered into March 29, 1892.

It stands conceded that the gradient lines on East Third, from Earl street to White Bear avenue, were established June 16, 1891, about two months prior to the commencement of the condemnation proceedings through which the city acquired land for slopes; and it also stands admitted that on so much of the street as had been laid out on the Hennessy land gradient lines were not established until September 22, about one month after the passage of the final order directing that the grading be done; and, further, that, when the final order just mentioned was passed, the condemnation proceedings had not been consummated, for the confirmation did not take place until December 14, 1891.

Plaintiffs commenced work under their contract immediately upon its execution, but were not allowed to complete it. They were forbidden to proceed June 10, 1893, and allege in the complaint that the reasonable value of the work actually performed is $39,781.52. They aver that from time to time estimates of their work were made by the city, as agreed in the contract, the amount aggregating $25,-075. Of this it is admitted that something over $24,000 has been paid. It is also averred, that, by means of an assessment for benefits made on abutting property, the city has collected over $28,000 on account of the improvement.

Stated in a general way, the position of counsel for appellant city is that a contractor cannot recover for work done in grading a street under a contract with the city, unless the permanent grade of the street has been established, and the title to the property to be used has been acquired, before the board of public works has been directed to proceed with the work. If all of these preliminaries are not complied with before the council determines to proceed with the improvement, a contract subsequently entered into for the performance of the work is ultra vires; prejudice to the public interest will be presumed; and the city can successfully resist any attempt to recover on the contract. If this be the law, it is immaterial whether the city orders a suspension of the work before the contract is fully completed, or allows it to proceed until finished, and then, having induced the contractor to invest his money and his labor, appropriates and enjoys the benefit thereof, refusing to make compensation, because of an irregularity in the order on which the preliminary steps were taken, for which irregularity its officials were alone responsible. An injustice so great as this would be should not be favored.

The cases on which the city relies as sustaining its contention are State v. District Court, 44 Minn. 244, 46 N. W. 349; State v. District Court Judges, 51 Minn. 539, 53 N. W. 800, and 55 N. W. 122; and Sang v. Duluth City, 58 Minn. 81, 59 N. W. 878. In the Lawton case, which was certiorari to review an assessment proceeding under this same charter, it was said, obiter, that the establishment of gradient lines was a prerequisite to the right of the city council to make any order in reference to the grading of the street. In the Shannon case (also

certiorari to review the action of the district court confirming an assessment of benefits for grading an avenue in the city of Duluth), the language used in the Lawton case was indorsed, and it was said that the duty of establishing gradient lines was imposed for the benefit and protection of the property owners, and that such lines must be established before any proceedings for permanent improvement of the street at the expense of the property holders could be begun. In this case it was not shown that permanent grade lines had ever been established, and the assessment was resisted on that ground, and also because the apportionment of benefits had been made on a false principle. In the Sang case it appeared from the complaint of the plaintiffs that they had entered into a contract with the village of West Duluth to grade, pave, and otherwise improve a certain street, which was supposed to cross a railroad right of way; that the village had never acquired any right of way for the street over or across the property of the railroad; that plaintiffs had complied with their contract except as to the railroad right of way, and as to that they had been prohibited and prevented by the company. Plaintiffs' claim for damages was for loss of profits by reason of their being prevented from performing their contract as to this right of way. The court held that, as to such part of the contract as provided for improving land belonging to the railroad company, it was ultra vires, and that plaintiffs could not recover, because the village had no color of right whatever to improve the railroad right of way as part of the street. It was expressly stated in the opinion that it was unnecessary to decide what the rule would be if the village had some color of right, as if it claimed under defective or void condemnation proceedings.

Neither of these cases is authority for the contention of counsel for defendant city. The first two mentioned may be regarded as authority for the proposition that a failure to establish a street grade before instituting assessment proceedings is a serious omission, and, if interposed seasonably, a sufficient objection to the confirmation of the assessment. And in the later case of Fitzhugh v. Duluth City, 58 Minn. 427, 59 N. W. 1041, it was held that an omission to establish the grade of a street before instituting assessment proceedings was an irregularity only, and did not go to the jurisdiction of the

district court to enter a tax judgment to recover the amount of such assessment, and that such a judgment could not be attacked in a collateral proceeding on account of such irregularity and omission; so that the full extent to which those cases go is that, if a property owner against whom proceedings to assess for an improvement have been instituted objects in due season, he may take advantage of the failure to establish grade lines before the improvement is undertaken.

This is altogether different, and falls very far short of sustaining the contention of the city that a contract to grade a street on which gradient lines had been established when bids for the work were called for, and when the contract was entered into, is absolutely void if such lines had not been fixed prior to the passage of an order by the council directing that the improvement be made, or if the condemnation proceedings to obtain an easement for slopes on the abutting land had not been fully completed when the order for grading was made. These irregularities may never be urged as against an assessment, and there comes a time when they cannot be. Should we adopt the views of counsel, we should put it in the power of the city authorities to repudiate the contract, and decline to pay a contractor, although every dollar of the amount assessed upon property benefited by the improvement has been paid into the city treasury; for, if such a contract is void, it must be for all purposes and under all circumstances.

The city further claims that in no event can plaintiffs recover, because the contract provides that the contract price shall be payable out of funds collected through assessments, which provision is in accordance with the terms of the charter. Sp. Laws 1887, c. 7, subc. 7, tit. 1, § 3. We need not go into a general discussion as to this claim, because it is admitted by the demurrer that the city has collected by assessments made for this improvement, and has in its possession, nearly $4,000, and as to this amount the complaint states a good cause of action. But on this question attention is called to Moritz v. City of St. Paul, 52 Minn. 409, 416, 54 N. W. 370.

Order affirmed.