# IN RE PETITION OF C. S. BRANDT AND OTHERS FOR CONSTRUCTION OF COUNTY DITCH NO. 110, RENVILLE COUNTY.
# J. P. SWOBODA v. COUNTY OF RENVILLE.[1]

February 5, 1954.

No. 36,144.

---

[1]Reported in 62 N. W. (2d) 816.

*Lauerman, Johnson & Gustafson,* for appellant.
*H. R. Pfeiffer,* for respondent.

DELL, CHIEF JUSTICE.

This is an appeal from an order of the district court affirming an order of the county board of Renville county establishing a county ditch.

The county board, pursuant to a petition filed with it, made an order establishing county ditch No. 110. On appeal to the district court the proceedings were remanded to the county board under a directive that, unless petitioners filed with the county board an amended petition within 30 days covering the matters pointed out in the directive, the petition be dismissed. An amended petition was filed, whereupon the county board again ordered the establishment of the ditch. Appellant, an owner of land traversed by the proposed ditch, appealed to the district court, and the court sustained the order of the county board establishing the ditch. The question presented by the appeal is whether the amended petition

contained sufficient signatures to confer jurisdiction in the county board to establish the ditch. The contentions of appellant and the relevant facts pertaining to each assignment of error will be treated separately.

■ Appellant claims that it was error not to include in the amended petition two 40-acre tracts of land traversed by a natural waterway. The court found that the proposed ditch would traverse 44 40-acre tracts, and appellant contends that actually the proposed ditch would traverse 46 40-acre tracts.

The amended petition requested the establishment of a ditch which would cover a watershed area of six square miles. The record and exhibits before us show that the proposed ditch would commence in the NE 1/4 of the SW 1/4 of section 12 in the township of Flora and extend in a general easterly direction. At a point in the NW 1/4 of the NE 1/4 of section 9 in Henryville township it would intersect and discharge into a natural ravine. The water from the proposed ditch would then travel easterly through this ravine to a point in the NE 1/4 of the NW 1/4 of section 10 of Henryville township a short distance beyond where the ravine turns northeasterly into section 3 of Henryville township. Between sections 3 and 10 of said township an east-west county aid road crosses the ravine. Construction of the ditch would again commence at the ravine, approximately four rods south of the county aid road in the NE 1/4 of the NW 1/4 of section 10 of said township, and from there the ditch would extend in an easterly direction approximately 1,500 feet following the course of an existing road ditch to Beaver Creek into which creek the ditch would empty. Beaver Creek, in turn, empties into the Minnesota River.

The purpose of constructing the ditch from the ravine in section 10 of Henryville township to Beaver Creek would be to divert the water from the ravine and keep it on the south side of the county road as a protection to the road itself. Pertinent portions of the files in the county ditch proceedings, which were received in evidence as exhibits and which are before us, show that water, at times, overflowed and damaged the county aid road. It is apparent from the

record and exhibits that the purpose of the construction of that portion of the ditch from the natural ravine in section 10 to Beaver Creek was to remedy this unsatisfactory road condition and to prevent reoccurrence of the overflowing. It is implicit in the drainage act that due protection must be given to public roads.

The two additional 40-acre tracts which appellant claims should have been included in the petition are those traversed by the ravine and are located between the point where the ditch empties into the ravine in section 9 and the point where the ditch commences again at the ravine in section 10. There will be no improvement or any construction work between those two points. The ravine will remain in its natural state. Appellant argues that this ravine is to be utilized in the ditch project and is a part of it and that the land which it traverses must, therefore, be included in the petition.

The statutes involved are M. S. A. 106.011, subd. 17, and 106.031. Section 106.011, subd. 17, provides:

" 'Ditch,' 'drainage system,' 'public drainage system,' 'improvement,' or 'drainage proceeding' means either an open or tiled system and all laterals or parts thereof; also the improvement of any natural waterway included in or utilized in the construction of any drainage system; * * *."

Section 106.031 provides:

"Before any public drainage system or other improvement * * * is established, a petition therefor shall be filed with the county auditor, * * *. Such petition shall be signed by not less than a majority of the resident owners of the land described in the petition or by the owners of at least 51 per cent of the area of such land. The lands described in the petition shall be those over which the proposed ditch passes or upon which the improvement is located, and the petition shall set forth the description of such lands and shall set forth the necessity for the ditch * * *."

Under § 106.011, subd. 17, a natural waterway becomes a part of a ditch or drainage system when it is *improved* and included in, or *improved* and utilized in, such project. Here it is clear that the

ravine will neither be *improved* and included in, nor *improved* and utilized in, the ditch or drainage system project. No claim is made that the ravine, as a result of the construction of the ditch, will be overflowed or the adjoining lands inundated or affected. The mere providing of ingress into, and egress from, a natural waterway does not constitute an improvement of the natural waterway within the meaning of this statute. This, in effect, was the finding of the trial court since it found that the proposed ditch would be traversed by 44 40-acre tracts. Had the two 40-acre tracts under consideration here been included, the finding necessarily would have been that 46 40-acre tracts were traversed by the natural waterway. It was unnecessary to include in the amended petition the two 40-acre tracts of land traversed by the ravine or natural waterway.

■ Appellant claims that the court erred in not finding that it was necessary for both joint owners of two 40-acre tracts of land to be traversed by the ditch to sign the petition. The two 40-acre tracts involved are owned by M. J. Goblish and Rose Goblish, as joint tenants. M. J. Goblish signed the petition, but Rose Goblish did not. The trial court found that 24 of the 44 40-acre tracts were owned by signers of the amended petition. Omitting the two 40-acre tracts owned by M. J. and Rose Goblish, it appears without dispute that there are still 24 40-acre tracts owned by signers of the amended petition. It is, therefore, clear from the findings that the lower court did not count these two forties, and it becomes unnecessary for us to decide whether both joint tenants of the Goblish land were required to join in the signing of the petition.

■ Appellant offered evidence to show that some of the land owned by signers of the amended petition was mortgaged and that the mortgagees had not signed the petition. The court sustained petitioner's objection to this evidence. Appellant contends that mortgagees are owners within the meaning of § 106.031 and that it was error for the court to exclude such evidence.

Morey v. City of Duluth, 75 Minn. 221, 77 N. W. 829, and Moritz v. City of St. Paul, 52 Minn. 409, 54 N. W. 370, are cited by appellant in support of this contention. In Morey v. City of Duluth, *supra,*

this court held that a mortgagee came within the meaning of the term "owner" as it appeared in the Duluth city charter. In reaching that decision, we pointed out that the language of the charter contained several references to "parties interested" and that the charter under its wording treated the terms "owner" and "parties interested" as being interchangeable. In Moritz v. City of St. Paul, *supra,* we held that a mortgagee, after foreclosure sale but before the expiration of the period of redemption, was within the meaning of the term "owner" as it appeared in the St. Paul city charter. In Land O' Lakes Dairy Co. v. County of Wadena, 229 Minn. 263, 39 N. W. (2d) 164, and S. R. A. Inc. v. Minnesota, 327 U. S. 558, 66 S. Ct. 749, 90 L. ed. 851 (affirming In re Petition of S. R. A. Inc. 219 Minn. 493, 18 N. W. [2d] 442), a somewhat different approach was taken. The question involved in the Land O' Lakes case was whether real estate was immune from taxation because the federal government held a mortgage on it. In S. R. A. Inc. v. Minnesota, *supra,* the question involved was whether the interest of a vendee under a contract for deed was immune from a real estate tax where the vendor of the real estate was the federal government. In both cases, despite the interest held by the federal government, it was held that the real estate was not immune from the real estate taxes.

Appellant points out that this court has held that drainage proceedings employ the sovereign powers of eminent domain[2] and refers us to the definition of "owner" found in the eminent domain statute. That statute, § 117.02, subd. 3, provides:

"The word 'owner' extends to all persons interested in such property as proprietors, tenants, encumbrancers, or otherwise."

It should be noted that § 117.01, the first section of the chapter on eminent domain, states:

"* * * nothing herein shall apply * * * to the taking of property under laws relating to roads and drainage when such laws

---

[2]In re Petition for Establishment of County Ditch No. 78, 233 Minn. 274, 47 N. W. (2d) 106; In re Town Ditch No. 1, 208 Minn. 566, 295 N. W. 47.

themselves expressly provide for such taking and specifically prescribe the procedure connected therewith."

The drainage act contains its own section of definitions. Section 106.011, subd. 19, provides:

" 'Resident owner' or 'resident freeholder' means the owner of land or the contract purchaser, and who resides in the state."

In view of what has been said we cannot presume that the legislature intended that the broad definition of "owner" as contained in the eminent domain statute is to be applied uniformly throughout the drainage act. This conclusion is fortified by other sections of the drainage act. For example, § 106.151, which refers to the duties of viewers and their reports, requires that their reports show the names of the owners as they appear on the current tax duplicate of the county. As mortgagees' names do not appear on the current tax duplicate of the county, mortgagees would not be owners within the wording of that section. Section 106.341, dealing with the auditor's lien statement, requires that the statement show the description of all lands as they appear in the viewers' report. Here again the names of mortgagees would not appear. Section 106.181, referring to jurisdiction, reads:

"Upon due publication, posting and mailing of the notice provided in * * *, the board or court shall have jurisdiction of all lands and properties described in the engineer's and viewers' reports and of all persons and corporations, municipal or otherwise, named therein, *and* all persons or corporations, having any interest in any mortgage, lien or encumbrance against any of the lands or properties referred to in such reports." (Italics supplied.)

As the names of the persons appearing in the viewers' reports are the owners as they appear on the current tax duplicate of the county, it appears that this section does not treat mortgagees as owners.

A review of the authorities of other jurisdictions dealing with the word "owner" as it relates to real estate reveals that the word does not have a fixed meaning applicable under all circumstances and to any and every enactment. The word "owner" may be used to

convey a broad meaning or it may be used in a restricted sense.[3] The particular section in which it is used here deals with the signing of the petition. This petition merely initiates the proceedings for the establishment of the ditch. It does not preclude other interested parties from later entering the proceedings.[4] We believe that the word "owner" is used here in its popular sense, the sense in which it is understood by the people as a whole. It refers to the general and beneficial owner, the person whose interest is primarily one of possession and enjoyment in contemplation of ultimate ownership. We do not consider it as including those who may have a right or lien to enforce against such property because of a collateral pecuniary claim. We hold that a mortgagee is not an owner within the meaning of § 106.031, and it was, therefore, unnecessary for mortgagees to sign the petition.

■ One of the 40-acre tracts involved in this proceeding was held under a contract for deed, and one of the vendors of that tract did not sign the petition. Appellant claims that the petition was insufficient because it lacked the signature of that vendor. The principles governing the relationship of vendor and vendee under a contract for deed are reviewed in In re Petition of S. R. A. Inc. 213 Minn. 487, 7 N. W. (2d) 484, and In re Petition of S. R. A. Inc. 219 Minn. 493, 18 N. W. (2d) 442, and need not again be stated.

---

[3] Glover v. United States, 164 U. S. 294, 17 S. Ct. 95, 41 L. ed. 440; Carter v. Bolster, 122 Mo. App. 135, 98 S. W. 105; Warren v. Lower Salt Creek Drainage Dist. 316 Ill. 345, 147 N. E. 248; Coombs v. People, 198 Ill. 586, 64 N. E. 1056; Animal Rescue League of Boston v. Assessors of Bourne, 310 Mass. 330, 37 N. E. (2d) 1019, 138 A. L. R. 110; McFeters v. Pierson, 15 Colo. 201, 24 P. 1076, 22 A. S. R. 388; Lindsay-Strathmore Irr. Dist. v. Wutchumna Water Co. 111 Cal. App. 688, 296 P. 933; Pinkerton v. Pritchard, 71 Ariz. 117, 223 P. (2d) 933; City of Phoenix v. State, 60 Ariz. 369, 137 P. (2d) 783, 146 A. L. R. 1255; McKee v. McCardell, 22 R. I. 71, 46 A. 181; Warren v. Borawski, 130 Conn. 676, 37 A. (2d) 364; General Realty Improvement Co. v. City of New Haven, 133 Conn. 238, 50 A. (2d) 59; Woodward Governor Co. v. City of Loves Park, 335 Ill. App. 528, 82 N. E. (2d) 387; see, Annotations, 2 A. L. R. 778 and 95 A. L. R. 1085.

[4] See, §§ 106.101, 106.171, and 106.251.

Also, our discussion concerning mortgagees in this opinion is equally applicable here. Likewise, the definition of "resident owner" or of "resident freeholder" in § 106.011, subd. 19, should be noted. We hold that a vendor is not an owner within the meaning of the statute under consideration here and that it was unnecessary for the vendor to sign the petition.

■ The county of Renville has a two-rod easement extending along the south side of four of the 40-acre tracts to be traversed by the ditch for the purpose of maintaining a road. The fee in this land is owned by some of the petitioners. Appellant contends that the county of Renville, by its authorized representative, must sign the petition. Respondent concedes that the easement is an interest in land but asserts, among other things, that under the circumstances here the county was not required to sign the petition. We do not believe that the legislature intended that a county must sign a petition in a drainage proceeding addressed to itself when it merely holds an easement for road purposes in land to be traversed by the ditch and is the body required to act upon the petition. Here the county board has, in fact, established the ditch on two different occasions, and it cannot now be said that its action is a nullity because it did not sign the petition. Moreover, the land on which the county holds the easement comprises four acres. Even if the county were to be considered the owner of these four acres within the meaning of the statute, which need not be decided here, there still remains sufficient land represented by signers of the amended petition to constitute the required 51 percent under the statute.

■ Three of the 40-acre tracts to be traversed by the ditch were conveyed to Henry and Florence Schwartz by Mayme Schlintz under a warranty deed. The conveyance was made subsequent to the signing of the original petition and prior to the signing of the amended petition. The amended petition was signed by Henry and Florence Schwartz. An agreement in writing was made between these parties which provided that, if the proposed ditch was established and the assessment levied in the proceedings under the original petition was not reduced, the Schwartzes should pay the amount of the

assessment to the county. If the ditch was not established or the assessment was reduced, Mayme Schlintz was then to receive from Schwartzes the amount of the assessment or the amount by which the assessment was reduced. Appellant contends that this agreement gave Mayme Schlintz an interest in the land so as to make her an owner under § 106.031, thereby requiring that she sign the petition. The agreement, by its terms, gave her no interest and, in fact, no lien upon the land. Her claims are exclusively under the contract. She cannot, under the contract, be held to be an owner of land within the meaning of the statute, and it was unnecessary for her to sign the petition.

Affirmed.