**Marie B. STIERNAGLE, Petitioner, Respondent,**

v.

**COUNTY OF WASECA, Relator.**

**No. C0-93-614.**

Supreme Court of Minnesota.

Jan. 14, 1994.

Larry Collins, Waseca County Atty., Waseca, for relator.

Eugene L. Sexton, Waseca, for respondent.

SIMONETT, Justice.

 A contract for deed *vendor* who continues to live on the land is not entitled to homestead classification for real estate taxation purposes. The contrary ruling of the Tax Court is reversed.

Respondent Marie B. Stiernagle has lived on her 80–acre farm in Waseca County since 1931. For some years prior to 1990 she rented the farmland to her son and daughter-in-law, James and Jacqueline Stiernagle. On November 20, 1990, the widowed mother sold the 80–acre farm to her son and daughter-in-law under a contract for deed. The parties used the standard printed contract-for-deed form, Uniform Conveyancing Blanks Form 54–M, *see* 29 Minn.Stat.Ann. 152–56: The purchase price was $56,000: $1,450 down, with the balance payable $422.94 a month including 7–percent interest over 20 years, but with the entire balance due 9 months after the mother's death. Under paragraph 6 of the form, the printed provision requiring the purchaser to pay real estate taxes was stricken, and the following language added:

> Seller agrees to assume and pay all realty taxes and assessments during such period she continues to reside on the premises. Thereafter, Purchasers shall assume and pay all realty taxes and assessments.

After the Waseca County Assessor denied the mother a homestead classification for the 1991 tax assessment, she petitioned the Tax Court for relief. Following a trial in the fall of 1992, the Tax Court, Judge Doar, issued its decision, ruling that the mother was entitled to a homestead classification. The Tax Court felt that Mrs. Stiernagle qualified as "owner" because she was in actual possession of the farm and the vendees had "no right to possession." Waseca County seeks review of the decision by certiorari to this court.

The issue, as framed by the county, is whether a contract for deed vendor who is living on the land and who has agreed to pay the taxes is entitled to a homestead classification.

 It is well-settled real estate law that a contract for deed works an equitable conversion of the real property conveyed. The vendor retains "fee title" and the vendee acquires a "vendee's interest." As this court put it in *Petition of S.R.A., Inc.*, 219 Minn. 493, 507, 18 N.W.2d 442, 450 (1945), *aff'd*, *S.R.A. v. Minnesota*, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946):

> It is well established by Minnesota decisions that a contract for the sale of land, part of the purchase price being paid, vests in the vendee an equitable title in fee with the bare legal title remaining in the vendor as security, and upon payment the vendor holds it in trust for the vendee.

 As the equitable fee owner of the premises, the vendee is entitled to full possession and enjoyment of the property, subject, of course, to cancellation of that ownership interest if the vendee does not comply with the contract terms. This being so, it follows that the vendor, holding only bare legal title as a security interest, is not an "owner" of the property as required for homestead classification under Minn.Stat. § 273.124, subd. 1 (1992) (agricultural homestead).

In *S.R.A., supra*, for example, the federal government, as vendor, sold an old post office building to the vendee under a contract for deed. This court held that the equitable estate of the vendee was subject to real estate taxes assessed by Ramsey County; that the federal government's only interest was the "naked legal title," and that this security interest did not constitute an ownership of the property. 219 Minn. at 511, 18 N.W.2d at 452. Our other cases are in accord. *See State v. City of Rochester*, 260

Minn. 151, 109 N.W.2d 44 (1961) (a vendor is not an owner for the purpose of an annexation proceeding); *Petition of Brandt,* 241 Minn. 180, 62 N.W.2d 816 (1954) (vendors under contracts for deed are not "owners" under a statute requiring the signatures of 51 percent of the owners of land to be transversed by a proposed drainage ditch); *Village of Hibbing v. Commissioner of Taxation,* 217 Minn. 528, 14 N.W.2d 923 (1944) (vendor is not an owner for purposes of a public hospital tax exemption); *see also* Minn. State Bar Ass'n, *Minnesota Title Standards* No. 90 (1986) ("A judgment or federal or state tax lien docketed or filed against a creditor vendor subsequent to the recording of the Contract for Deed may be disregarded by an examiner of the interest of the contract vendee or the vendee's assigns.").

Respondent Stiernagle argues that she was in possession of the farm and had the right of possession under the contract. But this is not what the contract for deed says. It merely says that real estate taxes are to be paid by the vendor "during such period she continues to reside on the premises." Possession alone is not enough to qualify for an agricultural homestead; the land must be "occupied and used as a homestead *by its owner* * * *." Minn.Stat. § 273.124, subd. 1 (1992) (emphasis added). One can occupy land without being its owner—for example, as a renter or tenant at sufferance.

We might add, as Waseca County points out, that if a vendor could be the "owner" for homestead purposes, purchasers could get the benefit of multiple homestead classifications by buying several farms and arranging for the sellers to remain in occupancy. While such transactions might be unlikely, the Tax Court's ruling would permit those with vendee equitable interests in multiple properties to have their properties taxed at the lower homestead rate by leaving the vendor in possession under some rental arrangement. Indeed, respondent's son may be in this position if, as seems likely, he has a homestead classification for his farm in Freeborn County, where he lives, in addition to the Waseca County property.

If Marie Stiernagle had wished to retain a life estate in the farm or at least part of it, she could, of course, have done so, but she did not. Or if it was her intention and that of her son to create a life estate, perhaps she might have sought reformation of the contract. But again, this is not the case.

Reversed.