# DANIEL E. EYRE v. CITY OF FARIBAULT.[1]

April 25, 1913.

Nos. 17,958—(61).

**Eminent domain — right of executor to sue for award.**

1. Since, under our statutes, an executor has the right to the possession of his testator's lands, without regard to the sufficiency of the personal assets to pay debts, and since the damages in condemnation proceedings stand in the place of the land, where the damages upon the condemnation of certain property were paid into court, an executor, claiming that the property belonged to his testator's estate at the time of its taking, had the right to sue, as for money had and received, a party who had obtained such money out of court, and this without regard to the financial status of the estate.

[1] Reported in 141 N. W. 170.

**Adverse possession — findings — evidence.**

2. Findings of the trial court upon an issue of title by adverse possession claimed by the defendant to have been perfected by it prior to the condemnation proceedings, *held* sustained by the evidence.

**Action not barred by condemnation proceedings.**

3. Where it appeared from the petition in condemnation proceedings that the title to the land was in doubt, and it did not appear from the order appointing commissioners to assess damages that such doubt had been settled thereby, and thereafter the damages assessed, the same being in gross and purporting to cover any and all interests in the property taken, were paid into court pursuant to G. S. 1894, § 2649, and no judgment such as that prescribed by section 2615 was ever entered upon the assessment, the condemnation proceedings did not, under the doctrine of res adjudicata, preclude the real owner of the land from asserting his ownership of the fund so deposited, as against a party who had obtained the same out of court, though the report of the commissioners undertook to award the damages to such party.

**Action not barred by ex parte order.**

4. Nor did a subsequent order, made upon an application under G. S. 1894, § 2650, and based solely upon ex parte affidavits and of which the plaintiff, who made no appearance thereto, had no notice, directing the fund to be paid over to the defendant, bar the plaintiff's claim of ownership thereof.

**Right of action against petitioner in condemnation.**

5. There was no merit in the defendant's contention that the plaintiff's only remedy was by an action against the condemning corporation for his damages.

**Laches.**

6. The defendant's claim, made for the first time in this court, that the plaintiff was estopped by reason of delay in the assertion of the title to the land, and that the plaintiff was also barred by laches, *held*, not sustained by the evidence.

**Division of award — evidence.**

7. Refusal of the trial court to allow the defendant's claim for improvements made prior to the condemnation proceedings, as an offset against the plaintiff's recovery, sustained for lack of evidence upon which a severance of the benefits conferred upon the entire property taken could be made as between the portion of the property to which the defendant succeeded in establishing title by adverse possession and the part thereof as to which its claim of title failed.

Action by the executor of the last will and testament of John Kennedy, deceased, to recover $4,000 and interest from May 28,

1901. The facts are stated in the opinion. The answer denied that the testator was the owner of the premises described in the complaint, and alleged a sale thereof by him to one Reardon, the death of Reardon, leaving as his sole heir his widow, Rose Ann Reardon, and a conveyance of the whole premises from said Rose Ann Reardon to defendant, which was the owner and in possession thereof until the condemnation proceedings mentioned in the opinion. The answer also set up title in defendant by adverse possession for 15 years prior to the year 1901, abandonment of the premises by the testator and his executor, the use and improvement of the premises by defendant, and laches on the part of plaintiff and his testator. The reply denied the new matter in the answer.

The case was tried before Childress, J., who made findings of fact that defendant, and its grantor and her husband, had been in the open, visible, hostile and continuous possession of the west half of the premises for more than 15 years prior to the condemnation proceedings in the year 1901, and ordered judgment in favor of plaintiff for $2,000, with interest from May 8, 1907, when the action was begun. From the judgment entered pursuant to the order for judgment, plaintiff and defendant appealed. Affirmed.

*S. R. Child, Benjamin Drake* and *J. W. LeCrone,* for plaintiff.

*E. H. Gipson,* City Attorney, for defendant.

PHILIP E. BROWN, J.

Action for money had and received, to recover $4,000, with interest from May 28, 1901. The cause was tried to the court, without a jury. Findings were made awarding the plaintiff $2,000, with interest from May 8, 1907. Judgment was subsequently rendered thereon, and both parties appealed.

We will briefly recite the main facts necessary to an understanding of the controversy, leaving other facts specially material upon the several branches of the case, both admitted and disputed, to be stated when we come to consider the point to which they relate.

In 1856 one John Kennedy became the owner of lot 2, block 32, in the city of Faribault. This lot, prior to 1871, with the exception of a few feet of its west end, remained vacant and unoccupied. The

lot was low, being largely in the river channel, and was subject to
annual overflows.   The soil was sandy, and the lot, in its natural
state, was unsuitable either for habitation or cultivation.   Its dimen-
sions were, and still are, 66 by 165 feet, the longest dimension being
from west to east.

In 1871 one Patrick Reardon and Rose Ann, his wife, became the
owners of lots 9 and 10 in the same block.   These lots were the same
size as lot 2, lot 9 being immediately west thereof and lot 10 south of
lot 9.   In the same year, and during each year thereafter until 1878,
Reardon and his wife had a garden on lot 9, which extended for a
few feet over upon the west end of lot 2 the entire width thereof, and
during the years mentioned they deposited and superintended the
deposit of refuse and soil east of the garden, thus making the part of
lot 2 so filled suitable for cultivation for some 80 feet towards the
east.   In 1878 the Reardons constructed a fence along the north line
of lots 9 and 2 as far as the land was tillable and planted a garden
upon all the land suitable therefor, and continued to maintain such
fence and cultivation until 1888.   In that year Patrick died, and his
wife, succeeding to whatever interest he had in the lots mentioned,
continued the cultivation referred to until 1890, but not thereafter.
In 1893 she conveyed all of the property mentioned to the city, which
took and held possession thereof until 1901.   No one occupied lot 2
or exercised any acts of ownership thereover for 30 years prior to
1901, except the Reardons and the city.   In April of that year a
railway company instituted proceedings to condemn lot 2 for railway
purposes, and thereafter such steps were taken that $4,000 was as-
sessed as damages and paid into court, and the railway company took
possession of the property.   Subsequently, and on July 19, 1901,
the city, upon an order of court, obtained such sum out of court, and
has since retained the same.   In 1882, John Kennedy died testate,
his wife, Jennie, surviving him.   The will contained no specific devise
of lot 2, but Jennie McEwen was named as residuary legatee.   In
1883 the plaintiff qualified as executor, and thereafter, in 1907,
brought the present action in which the ultimate claim of both parties
is to the ownership of the entire fund mentioned.

1. The city, as a preliminary claim, urges that this action should

have been dismissed because the complaint contains no cause of action, inasmuch as it fails to allege what interest the plaintiff has in the fund; and also because it fails to set forth the amount of assets in Kennedy's estate, the proven debts against it, the deficit of assets, and the amount necessary to settle the unpaid claims; and further for the reason that all claims against the Kennedy estate were barred by limitation at the time of the bringing of this action; and likewise on the ground that the plaintiff is not the real party in interest.

In connection with these points, the record discloses that the executor of the Kennedy estate rendered a final account showing that he had paid the funeral charges and costs of administration, and that thereupon, on November 7, 1883, the probate court made its order reciting the ascertainment and adjustment of the debts of the deceased and the examination and passing of the executor's account, from which it appeared that he had, for distribution, $1,817.45, the same being insufficient fully to pay the ascertained debts. It also appears that the court directed pro rata distribution which left a deficit of $771.39. Upon this showing, and in connection with the city's point that this action should be dismissed, it is argued that in no event could the plaintiff be entitled to any more of the fund in controversy than enough to pay such deficit.

We cannot sustain these contentions. As suggested by the Chief Justice upon the oral argument, the objections urged, save only those to the jurisdiction of the court and the sufficiency of the facts to constitute a cause of action, were waived under R. L. 1905, § 4129, the same appearing upon the face of the complaint and not having been raised by demurrer or answer. We think, also, that the plaintiff's right of action is unquestionable. As executor he had the absolute right to the possession of the land, without regard to the sufficiency of the personal assets to pay debts (R. L. 1905, § 3705; Miller v. Hoberg, 22 Minn. 249; 1 Dunnell, Minn. Dig. § 2722), and such right continues until the estate is finally settled (In re Scheffer's Estate, 58 Minn. 29, 59 N. W. 956). Since, therefore, the plaintiff has never been discharged as executor, and as the fund involved stands in the place of the land (Smith v. City of St. Paul, 65 Minn. 295, 297, 68 N. W. 32), he likewise has the right, as

executor, to reduce such fund to possession, and this without regard to the financial status of the estate.

2. The city claims that it became the owner of the whole of lot 2 by adverse possession, while the plaintiff contends that no such title was established either to the lot in its entirety or to any part thereof. The court sustained the city's claim as to the west half of the lot, denying it as to the other half, and both parties assign error upon such holding. It would be idle to recite the voluminous testimony on the question thus raised. It has been considered, and when the nature and situation of the lot and the uses to which it was adaptable during the period of its occupancy (see Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220; Costello v. Edson, 44 Minn. 135, 46 N. W. 299), are kept in mind, we find no difficulty in reaching the conclusion that the finding of the trial court referred to must be sustained as against the attack made thereupon by both of the parties to this action. In reaching this conclusion we have not overlooked the plaintiff's contention as to the quantum and character of proof necessary to establish title by adverse possession, and in deference thereto we again reiterate that "the rule guiding this court in the consideration of the question whether the findings of the trial court are sustained by the evidence remains the same, whether the fact found be required to be established by a preponderance of the evidence, or by clear, convincing, or satisfactory evidence. The evidence must be clearly against the findings in either case to justify a reversal." Oertel v. Pierce, 116 Minn. 266, 133 N. W. 797. Ann. Cas. 1913A, 854. See also Holien v. Slee, 120 Minn. 261, 265, 139 N. W. 493, 494. The constituents of title by adverse possession have been so frequently stated in our reports that repetition thereof here would be supererogation, and it is sufficient to say, applying the rule of appellate procedure announced above, that upon each and all of them the findings of the trial court must be sustained.

3. The city contends that the plaintiff's claim is barred under the doctrine of res adjudicata, insisting that its title to lot 2 was conclusively adjudicated in the condemnation proceedings, and that its right to the fund in question was established by the court's order, of date July 19, 1901, directing the same to be paid over to it.

Taking up these contentions in order, let us examine the nature of condemnation proceedings, laying aside for the moment the plaintiff's point that he is not bound thereby or by the order mentioned, because he was not a party to and had no notice of either the condemnation proceedings or the application pursuant to which such order was made, and made no appearance in or to either. G. S. 1894, which were in force at the time of the condemnation of lot 2, provide, so far as here material, as follows: Section 2604 confers upon railway corporations the right to condemn lands; section 2605 relates to the petition, and provides that it shall state the "property and estate which it will be necessary to appropriate," and shall set forth "the name of each and every owner, incumbrancer, or other person interested in the same or any part thereof, so far as the same can be ascertained by the public records, and by view of the premises or other inquiry touching the occupation thereof," and shall pray for the appointment of commissioners "to ascertain and determine the compensation to be made to such owner or owners respectively, for the taking," etc.; section 2606 provides for service of notice of the petition, and requires service upon "each and every person named therein," etc.; section 2608 provides that "at the time and place appointed for hearing said petition * * * upon the presentation of such petition, with satisfactory proof that all the parties therein named have been duly served with the said notice as hereinbefore prescribed, the court shall proceed to hear and determine the same," and that all or any of the persons whose lands, property, estates, or interests are to be affected by the proceedings may show cause against the prayer of the petition, and may disprove any of the facts alleged in it, and, further, that if the court shall be satisfied that the taking of the land is proper, etc., it shall appoint commissioners "to ascertain and determine the amount to be paid by such corporation, to each of such owners or persons interested, as compensation for his or her damages by reason of the taking," etc.; section 2609 relates to the powers of the commissioners, and provides that they "shall hear the proofs and allegations of all persons interested," and shall "make in each case a separate assessment of the damages which will result to any person, company, or corporation by reason of * * * the taking * * *

and award the same to the owner or owners or persons interested therein respectively;" section 2611 provides for payment of the damages assessed; section 2615 prescribes the judgment to be entered upon the assessment, the same being that as against the parties interested therein the title to the property shall be in the corporation; section 2649 provides for the payment of the amount assessed into court in case of doubt as to the parties entitled thereto and upon the corporation's affidavit to such effect; and section 2650 provides that any person claiming to be entitled to any of the money so paid into court "may apply to the court therefor, and, upon furnishing evidence satisfactory to the court that he is entitled to the same, the court shall make an order directing the payment to such claimant the portion of such money as he shall be found entitled to; but if, upon such application, the court should determine that the title to the tract or tracts specified in the application of such claimant was in such condition as to require that an action be commenced to determine the conflicting claims thereto, he shall refuse such order until such action is commenced, and the conflicting claims to such real estate determined according to law."

From the above résumé of the statutes, it will at once be noted that it is in section 2609 alone that any suggestion is made from which it might be inferred that the titles of claimants as between themselves are to be determined in the condemnation proceedings.

It is true that it was held in Brisbine v. St. Paul & S. C. R. Co. 23 Minn. 114, 128, under a statute making no provision for notice of the application to condemn, that "whenever * * * either by an indefinite statement in the petition as to the interest of the claimant in the property, or by one not accepted by him as true before the commissioners, it becomes necessary for them to inquire into and decide the question of title or interest as incidental to the question of damages, it is proper matter for their consideration, and their decision thereon is reviewable, upon appeal, in the district court." It is also true that where jurisdiction has attached the award of the commissioners as to each claimant is conclusive as between the corporation and all parties claimant and their privies (Trogden v. Winona & St. P. R. Co. 22 Minn. 198), and that it has been held that as be-

tween the corporation and the claimant the latter's title is determined by the court at the time of the appointment of the commissioners. St. Paul & S. C. R. Co. v. Matthews, 16 Minn. 303 (341). Yet, in view of the nature of condemnation proceedings, the same being essentially in rem (Smith v. City of St. Paul, 65 Minn. 295, 297, 68 N. W. 32; 15 Cyc. 805) it would seem that it was not intended by the statutes that conflicting claims to the land and thus to the award, should be in issue or determined in the condemnation proceedings, either by the court or the commissioners, except as between the corporation and the claimants. Certainly, where it appears from the condemnation petition, as it does here, that the title to the property is in doubt, and it does not appear from the order appointing the commissioners that such doubt has· been settled thereby, and thereafter the damages assessed, the same being in gross and purporting to cover every and all interest in the property, are paid into court pursuant to section 2649, and, furthermore, where, as here, no judgment such as that provided for by section 2615, has been entered (see Fletcher v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 339, 347, 69 N. W. 1085), it cannot be held that, as between conflicting claims of ownership, the title to the property was adjudicated in the condemnation proceedings so as to preclude the real owner from asserting his ownership of the fund so deposited. See 15 Cyc. 894, 895. The provisions of section 2650 are, alone, practically conclusive against such a contention; otherwise we would have the unthinkable anomaly of the court, upon subsequent application to pay over the money, being empowered or required to readjudicate that which it has already finally determined.

And if the title as between the parties to this action was not in issue in the condemnation proceedings, we cannot hold that it was put in issue by or upon the city's application to the court for the fund, pursuant to which the order of July 19 was made, the same having been upon ex parte affidavits and without further notice to anyone. The rule against collateral attack has no application to such an order, and we hold, therefore, that, notwithstanding the very broad provision of section 2650, the plaintiff is not concluded by such order. In this view of the case it is not necessary to pass upon the question as to

121 M.—16.

whether the notice, in the condemnation proceedings, to the residuary legatee constituted, in any sense or for any purpose, notice to the executor.

But the city contends that if the executor is not bound, so far as concerns his claim to the fund in controversy, by the condemnation proceedings or by the order of July 19, then his rights are in no way affected, and hence he still has his remedy against the railway company and cannot maintain his present action. We cannot so hold. The report of the commissioners assessed the $4,000 in controversy as "the damages which will result to any person, company or corporation by reason of the construction of such branch railroad and the taking" of the property for such purpose, and the statute, section 2649 above cited, under which the railway company paid the money into court, expressly provides that where, as was done in this case, the railway company files an affidavit of doubt as to who is entitled to the damages, then "upon making such payment into court of the damages assessed * * * such railroad company shall be released and discharged from any and all further liability therefor," unless the damages are increased upon an appeal, etc. In other words, the report of the commissioners, though undertaking to award the damages to the city, nevertheless purported to and did assess the damages of any and all persons interested in the lot, and not merely the damage to the city's interest, if any, therein. The very purpose, therefore, of the statute would be defeated if it were to be held that the real owner of the fund, if the city be not such, could not pursue the same in the hands of the city, but must bring an action against the railroad company for further damages.

Furthermore, it is settled in this state that the damages assessed stand in the place of the property taken, (Moritz v. City of St. Paul, 52 Minn. 409, 414, 54 N. W. 370; Boutelle v. City of Minneapolis, 59 Minn. 493, 497, 61 N. W. 554; Smith v. City of St. Paul, 65 Minn. 295, 297, 68 N. W. 32; Lumberman's C. Ins. Co. v. City of St. Paul, 82 Minn. 497, 503, 85 N. W. 525; North Coast v. Hess, 56 Wash. 335, 105 Pac. 853; 2 Lewis, Eminent Domain, § 894) and that the real owner thereof may sue as for money had and received to recover the same from any one into whose hands they may come,

without regard to any remedy he may have against the corporation for which the property was taken. Smith v. City of St. Paul, supra.

4. The city's claim, made for the first time in this court, that the plaintiff was estopped by reason of his and his testator's failure sooner to assert title to the property, cannot be sustained; for we find nothing in the evidence to sustain it. Dimond v. Manheim, 61 Minn. 178, 183, 63 N. W. 495. Nor do we find any merit in the city's claim of laches.

5. As to the city's contention that the court erred in refusing to allow its claim for improvements, this also, assuming that it was in issue, must be overruled. It is true that there was evidence tending to show that the city, by various betterments, increased the value of lot 2 in a considerable sum, but there was no evidence upon which a severance of the benefits thus conferred upon the whole lot could be made as between the west half, to which the city established its title, and the east half, as to which the city's claim of title failed. We cannot, therefore, overturn the decision of the trial court on this point.

Judgment affirmed.