## Lancaster School District, Appellant, *v.* Lancaster County.

Argued December 3, 1928. Before MOSCHZISKER, C. J.; FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Robert Ruppin* and *Charles G. Baker,* with them *H. Clay Burkholder,* for appellant.—The school district had an equitable title under the agreement of 1822, which was confirmed by the Act of 1835 and the deed of 1836: Klinkener v. School Dist., 11 Pa. 444; Henderson v. Hunter, 59 Pa. 335; Beatty v. Kurtz, 2 Peters 566.

The use created by the deed of 1836 was a passive use, which was executed when the school district acquired capacity to take the legal title, so that the legal and equitable titles were then merged in it: Fisher v. Wister, 154 Pa. 65; Ottomeyer v. Prichett, 178 Mo. 166; Bradley v. Telephone Co., 54 Pa. Superior Ct. 388; Dark v. Johnston, 55 Pa. 164; Rerick v. Kern, 14 S. & R. 267; Van Kirk v. Clark, 16 S. & R. 286.

Even if the estate of the school district in the land, after the Act of 1911 went into effect, be considered a base fee, when the land was taken by the federal government the estate became absolute: Freyvogle v. Hughes, 56 Pa. 228; Scovill v. McMahon, 62 Conn. 278.

If plaintiff's paper title was not sufficient to permit a recovery, plaintiff nevertheless had an absolute estate in fee simple by adverse possession: Evans v. Erie Co., 66 Pa. 222.

Plaintiff's claim was not defeated by the running of the statute of limitations, because the bar of the statute was nowhere raised in the proceedings: Barclay v. Barclay, 206 Pa. 307; Am. P. Co. v. Refining Co., 275 Pa. 332.

*John E. Malone,* with him *George T. Hambright, O. S. Schaeffer, J. Roland Kinzer* and *Jacob Hill Byrne,* for appellee.—Appellant shows no cause of action in the present suit: Bredin v. Ry., 165 Pa. 262; Winebiddle v. R. R., 2 Grant 32; Directors of Poor v. R. R., 7 W. & S. 236; Niswenter v. Water Co., 43 Pa. C. C. R. 401; Stonecipher v. Keane, 268 Pa. 540.

Appellant had no title to the land in question: Ford v. School Dist., 121 Pa. 543; Sloan's App., 168 Pa. 422;

Lennig's Est., 154 Pa. 209; Haverford College v. Rhoads, 6 Pa. Superior Ct. 71; Northampton Co. v. Co., 128. Pa. 132; Henderson v. Hunter, 59 Pa. 335.

Appellant's claim is barred by the statute of limitations or laches.

OPINION BY MR. JUSTICE FRAZER, January 7, 1929:

Determination of this appeal involves legal disposition of $42,833 which the government of the United States paid for real estate within the City of Lancaster as a site for a post office building. The federal government instituted proceedings in 1916 in the District Court of the United States for the Eastern District of Pennsylvania to condemn the land, viewers appointed valued the property at $42,833, adjudged the title to be vested in the County of Lancaster and upon entry of a decree by the court that sum was paid the commissioners of the county, who thereupon executed and delivered a deed to the government for the property. In 1926 the School District of Lancaster City, claiming to have had legal title to the land in question previous to and at the time of condemnation proceedings, instituted suit to recover the valuation fixed by the viewers. At the trial both parties presented points for binding instructions, which the court reserved and directed a verdict for defendant. Subsequently the court in banc, in a written opinion, refused to either enter judgment n. o. v. for plaintiff or grant a new trial. The school district appeals from that judgment.

The litigation here developed from the following undisputed facts: The General Assembly of this Commonwealth by a local Act of April 1, 1822, P. L. 110, created the "First Section of the Second School District of Pennsylvania," this section comprised territory covered by the City of Lancaster and of which the present school district, appellant here, is the legal successor. The court of common pleas, empowered by that statute, appointed school directors who, by the same law, were di-

rected and authorized "to draw upon the county treasury for money necessary in erecting, establishing and maintaining the schools within the First Section." A school site and building being then required William Kirpatrick on June 19, 1822, entered into a written agreement of sale with the school directors to convey to them the real estate in question within the City of Lancaster, for the price of $1,000, the principal to be paid within five years, interest to be paid annually and title and possession delivered to the school board on July 1, 1822. Nothing further was done by the directors in the way of completing this contract; no part of the principal was paid and no deed delivered. Payments of the interest, however, were made annually until the year 1835, but it does not appear that these payments were made by the school board, nor is there evidence that the cost of the subsequent erection of a school building on the land was defrayed by the school directors. They doubtless took advantage of the provisions of the Act of 1822 which authorized them to draw upon the county treasury for funds necessary to establish and maintain the newly-created school district, and as no alternate method was provided for securing needed funds, we may fairly agree with the court below and presume payments came from the treasury of the county, and not from the school district.

With the building erected, the new school district functioned, and nothing more was done with respect to acquiring title to the land in question until by the Act of April 15, 1835, P. L. 289, the commissioners of Lancaster County were authorized to purchase the land from Kirkpatrick for the sum of $1,000, "and to take a conveyance for the same and hold the same for the use of the directors of the First Section of the Second School District in the City of Lancaster aforesaid, so long as the building erected on said lot of ground shall be used by the said directors for the purposes of education, and when the same shall cease to be so used, the said lot of

ground and buildings thereon erected shall be vested in the commissioners of the County of Lancaster, for the use of the said county." Pursuant to this act, Kirkpatrick, by deed of June 7, 1836, conveyed the land to the county commissioners and their successors in office for the sum of $1,000, received that amount and delivered the deed. The above quoted provisions of the Act of 1835 were recited in full in the preamble of this deed, and the habendum reads as follows: "To have and to hold the said above described messuage, lot, parcel or piece of ground referred to in the above recited act or part of an Act of Assembly......for the purposes set forth and designated in the above recited act or part of an Act of Assembly forever."

The land thus purchased by the county continued to be used for school purposes until condemned and taken over by the federal government in 1917, when that use was discontinued. By special agreement with and payment of a rental to the government of the United States, a part of the school building was utilized by the school board for administrative purposes.

Appellant contends that by the agreement of sale made with Kirkpatrick in 1822, it acquired an equitable title to the land and that by the Act of January 22, 1850, P. L. 16, the school board was "impliedly" granted the power to hold real estate, and the equitable and legal titles were thus merged in the board. The learned court below did not accept this conclusion and held that under the deed of 1836 the County of Lancaster was the owner of the land and was entitled to receive the valuation money awarded by the viewers. Our examination of the record of the case leads to an affirmation of that judgment.

We are unable to see that the Act of 1850 supplies any link in the chain of title by the school board. If it empowered, impliedly or otherwise, the school district to hold real estate (a matter which we do not and need not decide here), it was a power to be exercised in futuro.

Section 12 of the act provides that the board "shall have power to borrow money for the purchase of grounds and the erection of school houses......and to pledge by mortgage any part or all of their real estate for the security and repayment thereof." These provisions clearly have reference to acquisition of property by the school district subsequent to the enactment of the statute of 1850.

The agreement of sale with Kirkpatrick in 1822 specified that the purchase money should be paid within five years. The school board failed to pay any part of that sum and in fact at no time performed its part of the contract. Kirkpatrick waited eight years after the period fixed for payment of the principal had expired, during which time the directors continued to use the property for school purposes and the county paid interest on the $1,000, as the record fairly indicates. A school building was erected on the land; that however was an improvement not to be accredited to the school district, as the evidence permits of no other conclusion than that the contract was made and the cost of construction met by the county commissioners, the funds to meet necessary payments coming from the county treasury. We may fairly assume that the school board could not or would not do more under the contract of sale of 1822, and recourse was had to the General Assembly for authorization for the purchase of the property by the county, instead of by the school district, which authority was granted by the Act of April 15, 1835, P. L. 289. The deed of conveyance was made in accordance with the express directions and expressions of the Act of 1835, the county paid the $1,000 purchase price and received the deed. Was the school district invested with a legal title to the land by the provisions of this instrument? The learned court below answers that question adversely, and our examination of the deed confirms that conclusion. It constitutes a grant of the land and buildings to the county commisisoners and their successors in

office, and passes the fee to the county, with merely a conditional estate in the school district. The county is to take and hold the land "for the use of the directors, so long as the building erected on said lot of ground shall be used by the said directors for the purpose of education." Certainly if the deed went no further than that, no condition would be rasied. It would be a mere recital that the use was made for a particular purpose, and consequently we concur in the observation of the court below that, while there was a definite and fixed time for the use, had there followed no agreement as to the disposal of the property after that time, the fee could be considered as vested in the school board and subject to its disposal, following Sapper v. Mathers, 286 Pa. 364, where we said, page 366, "we have repeatedly held that a deed's limitation of the use to which land conveyed might be put did not, without more, create a conditional fee or cause a forfeiture if put to another use," and a grant declared to be for a special purpose, without other words, cannot be held to be a condition; to make the estate conditional the instrument must clearly show such intent: Methodist Church v. Old Columbia Pub. Ground Co., 103 Pa. 608, 614; Cook v. Trimble, 9 Watts 15.

We are met with no such difficulty in the case before us. Here in so many words there are both a plain and direct limitation of the fee and a forfeiture or termination of the estate in case the premises cease to be used for the purposes of education, "and when the same shall cease to be so used, the said lot of ground and buildings thereon erected shall be vested in the commissioners of the County of Lancaster, for the use of the said county." These words create a conditional estate depending, not upon the use of the ground for educational purposes, but upon the use of the building thereon for such purposes. The use ceased, the limitation was reached, when the federal government in 1917 took over the property for its own purposes. The condition of reverter in the deed

is definite and the words connect the condition with the grant, qualifying and restraining the use of the premises for a definite time and a sole purpose: Cook v. Trimble, supra. It follows then that the present school district of the City of Lancaster, as the legal successor of the original board, was vested with the same contingent right in the property, and cannot claim a more extended estate than that possessed by its predecessor. At the time the conditional estate was dissolved by the cessation of the use of the building for school purposes, the county took the property in fee, and consequently became entitled to the purchase money paid by the United States.

What we have said in the foregoing disposes of appellants' fifth and sixth assignments of error. As to the seventh complaint, that the court below erred in holding that plaintiff's claim was barred by the statute of limitations, we think it sufficient to adopt the words of the trial court: "In this case, as I have already stated, the condemnation proceedings were held in 1916 and the money found to be due thereon was paid in 1917. Therefore, as the suit was commenced by bill filed July 14, 1926, nearly nine years intervened between the time plaintiff [claims to have been] entitled to receive the money and the time it brought this suit. It would for this reason seem to me that the statute itself bars a recovery."

Judgment affirmed at appellant's costs.