### TERMINAL COAL CO. v. UNITED STATES.
#### No. 9697.

United States Court of Appeals
Third Circuit.

Argued Nov. 19, 1948.

Decided Jan. 11, 1949.

same shall be needed or required for the corporate uses and purposes of the said [railroad]." Appellant has succeeded to whatever interest was retained by the Hays Estate.

On July 23, 1942, appellee petitioned for the condemnation in fee simple of twenty-eight parcels of land, one of which was the aforementioned strip. About two weeks later, appellee filed a declaration of taking and made a deposit of the estimated just compensation. It is undisputed that the right of way had been used for proper railroad purposes continuously until the condemnation proceedings were instituted.[2]

On July 12, 1945, the district court appointed viewers who, in December, 1946, filed a report adjudging that the "just compensation [to appellant] for the property so taken is nothing * * *." The court thereupon issued a nisi order of confirmation of the Report of Viewers.

Appellant petitioned for, and was allowed, an appeal from that adjudication. Trial was had before a jury. Appellant produced two witnesses for expert appraisals. One of them was unable to give an estimate of the value of the interest of appellant, save under the assumption "that the railroad had been abandoned and ceased its use"; so an objection to his qualifications was sustained. The other, testifying that the best use of the strip was for industrial purposes, placed a valuation of $7149 on the interest of appellant.[3] Appellee, on the other hand, offered the testimony of two expert witnesses, both of whom asserted that the interest of appellant was worth nothing. The jury returned a verdict in favor of appellee. A subsequent motion to set aside the verdict and grant a new trial was refused.[4] The instant appeal followed.

Edward J. McGinness, of Pittsburgh, Pa., for appellant.

John F. Cotter, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., and James F. Boyer, Sp. Atty., of Pittsburgh Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

**O'CONNELL, Circuit Judge.**

In 1883 the James H. Hays Estate granted to the Pittsburgh Southern Railway Company, a predecessor of the Baltimore & Ohio Railroad Company, a right of way embracing the property here in question.[1] The right was to continue "so long as the

---

[1] Known as Parcel No. 2, the strip of land has an area of 1.38 acres, is 45 feet wide, and is situated in Allegheny County, Pennsylvania.

[2] For valuable consideration, the railroad renounced all claims to compensation for Parcel No. 2, in an agreement made with appellee subsequent to the declaration of taking.

[3] This witness apparently estimated the value of the land to be 14,298, so that he thought the interest of appellant to be half of the total value.

It might be noted that the testimony of this witness leaves considerable doubt as to his qualification as an expert. The only sale of an interest like that of appellant with which he was familiar had occurred in 1898; and that information had been given him by his father. See United States v. 13,255.53 Acres of Land, etc., 3 Cir., 1946, 158 F.2d 874, 877. Appellee, however, interposed no objection.

[4] The order of the court below was accompanied by an opinion, reported at W. D.Pa., 1948, 76 F.Supp. 136.

The precise question which we have been called upon to decide is whether appellant, as a matter of law, is entitled to recover the fair market value of the land as though the right of way had been abandoned, as of the date of the condemnation. Accordingly, we shall not inquire into whether the railroad should have been joined as a party and whether appellant would in any event be entitled to nominal damages.

In brief, appellant takes the position that, "as this case involved the question of title to real property condemned by the Federal Government, the ownership of the land must be determined by the law of the state where the realty is located," Pennsylvania; and that, under the law of Pennsylvania, when the land was condemned the "easement[which was then] vested in the railroad company became extinguished and ceased to exist, and the right enured to plaintiff as owner of the fee in the land condemned to recover its market value as of the date of the taking, and as unaffected by the taking."

We shall assume arguendo that the law of Pennsylvania would be controlling. Neither the cases cited by appellant nor other authorities we have examined support the assertion of appellant that the condemnation effected not only an extinguishment, albeit involuntary, of the right of way of the railroad, but also ipso facto an acquisition of the unencumbered fee simple estate by appellant.

In Lancaster School District v. Lancaster County, 1929, 295 Pa. 112, 144 A. 901, 902, on which appellant has placed principal reliance, a school district contracted to buy a piece of land from one Kirkpatrick. A school building was then erected upon the land, apparently with money furnished by the county. Subsequently, under authority of a statute authorizing purchase of the land and holding it "for the use of the directors of [the school district] * * * so long as the building erected on said lot of ground shall be used by the said directors for the purposes of education," Act April 15, 1835, P.L.Pa. 289, the county bought the land from Kirkpatrick and paid him therefor. Fifteen years later,

another statute empowered the school board to purchase ground and erect schoolhouses.

The federal government condemned the land sixty-six years afterward. The school district claimed the compensation upon the theory that its agreement with Kirkpatrick gave it equitable title, that the second statute authorized it to hold realty, and that it thereby gained full title to the land by merger of the legal and equitable titles. The Supreme Court of Pennsylvania, however, stressing that the district had never paid anything, ruled that the second statute was not retroactive in application, so that the school district never had the right to legal title. From its opinion, we may fairly conclude that the court viewed the school district as having yielded its equitable rights to the county and as being like a tenant for a period terminable upon the happening of a contingency such as the condemnation. Unlike the case at bar, no conveyance had been made to the occupant of the land by the holder of the legal title; and the federal government, having paid just compensation for the property condemned, was not a party to the controversy between the county and the school district. It is not inapposite to note further that another federal appellate court has expressly declined to follow the Lancaster School District decision if it were to be construed as is here urged by appellant. See People of Porto Rico v. United States, 1 Cir., 1942, 132 F.2d 220, 222, certiorari denied 1943, 319 U.S. 752, 63 S.Ct. 1165, 87 L.Ed. 1706.

Phillips v. Dunkirk, W. & B. R. Co., 1875, 78 Pa. 177, the other case urged by appellant, simply stands for the principle that when property is condemned for a public road and the road is later abandoned and another road substituted, the private landowners regain the property rights they had relinquished, so that a railroad which later seeks to use that property may not occupy it without payment of just compensation.

At best, therefore, it would appear that Pennsylvania courts have not passed upon the question sub judice. On the other hand, the Restatement expressly espouses the view which the court below here adopt-

ed,[5] as do all decisions of other jurisdictions which have to our knowledge passed upon this question. See People of Porto Rico v. United States, supra, and cases cited therein; Beard's Erie Basin v. People of New York, 2 Cir., 1944, 142 F.2d 487, 489; United States v. 1119.15 Acres of Land, E.D.Ill., 1942, 44 F.Supp. 449, and cases cited therein; United States v. 2086 Acres of Land, etc., W.D.S.C. 1942, 46 F.Supp. 411, 413; United States v. 16 Acres of Land, etc., D.C.Mass., 1942, 47 F.Supp. 603; and cf. Olson v. United States, 1934, 292 U.S. 246, 257, 54 S.Ct. 704, 78 L.Ed. 1236. Accordingly, we believe that, if the issue at bar were to confront a Pennsylvania court, the rule of law which recognizes the "substantiality of the fee"[6] in the railroad and which conforms with the Restatement view would be followed.

We have thus far considered the question as though Pennsylvania law would govern decision. As is well expressed in the opinion of the court below and citations therein, however, we deem it clear that the measure of compensation due appellant must be grounded upon the Constitution of the United States, under which the railroad would not be considered to have forfeited its estate because it yielded to the condemnation power. Cf. also United States ex rel. T. V. A. v. Powelson, 1943, 319 U.S. 266, 275, 276, 63 S.Ct. 1047, 87 L.Ed. 1390, and United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 1942, 129 F.2d 577, 579. We are satisfied, moreover, that these cases announce the logical conclusion; for, if the condemnation eo instanti extinguished the interest of the railroad, we see no reason why it would not have the same effect upon the interest of appellant. The contention of appellant could have validity only if some interval of time elapsed between the surrender of the

interest of the railroad and that of appellant. Such was not here the case.

In view of the foregoing considerations, appellant was certainly accorded every protection of its rights in being permitted to take to a jury the question of the fair market value of the reserved interest. There being more than ample testimony to support the jury finding, the judgment of the court below will be affirmed.

---

5 The Illustration to Section 53, comment b, of 1 Restatement, Property, 1936 ed., is on point:

"A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B Church Corporation so long as the premises are used for church purposes.' While B is continuing to use Blackacre for church purposes, and at a time when there is no desirability in B changing the site of its church, the City C, in which Blackacre is located, initiates eminent domain proceedings to acquire Blackacre as a part of a public park. B's estate in Blackacre has the same value, in these eminent domain proceedings, as an estate in fee simple absolute in Blackacre."

6 See Western Union Tel. Co. v. Penn. R. R. et al., 1904, 195 U.S. 540, 570, 25 S.Ct. 133, 141, 49 L.Ed. 312, 1 Ann.Cas. 517.