STATE, BY WALTER F. MONDALE, ATTORNEY GENERAL, v. INDEPENDENT SCHOOL DISTRICT NO. 31 AND OTHERS.

123 N. W. (2d) 121.

July 12, 1963—No. 38,652.

---

*Stiening, Olson, Thysell & Gjevre* and *Charles Bangert,* for appellants.

*Powell & Dessert,* for respondent.

SHERAN, JUSTICE.

The appeal is from an order of the district court directing payment of $20,000—part of an award in condemnation held by the clerk of that court—to Independent School District No. 31 on the theory that it was entitled to said fund as against persons claiming under rights acquired from Henry A. Krebs, deceased.

The question for decision is whether, under the facts of this case, an award made in condemnation proceedings by the State of Minnesota is payable in full or in part to the successors in interest of a prior owner of the property condemned, who joined in a conveyance to the school district by deed effective to transfer title in fee simple absolute except for the following provision:

"Provided, however, that this conveyance is made upon the express condition that said premises forever shall be used by the grantee or its assigns as an athletic field and playground for the benefit of the school children of said Independent School District No. 7 and that if said premises ever cease to be so used, or if said premises, or any part or parts thereof, are ever used by the grantee or its assigns, for any other purpose, then the estate hereby quit claimed and conveyed shall revert and revest in the said parties of the first part and their heirs and it shall be lawful for them to re-enter upon the premises hereby quit claimed and conveyed the same as if this deed had never been made."

Our problem had its inception when a condemnation petition was filed by the State of Minnesota pursuant to Minn. St. c. 117 by which the state sought to "take and acquire by condemnation the fee simple absolute title" to described real estate in the city of Bemidji, Minnesota, including the land conveyed to Independent School District No. 31 by the deed above described. (This tract will hereafter be referred to as Parcel No. 1.) Notice of hearing on the petition was served on appellants as successors in interest of Henry A. Krebs, deceased, one of the five grantors making the conveyance. An answer was interposed on their behalf in which it is alleged that appellants did not "object to the proceedings by the State of Minnesota to take Parcel Number One * * * provided such taking can be legally done by preserving the interest of the Estate of Henry A. Krebs and his heirs in and to their interest in said tract of land and premises." The answer further alleges "[t]hat the taking of the premises by the State of Minnesota will result in the breach of said covenant for use and occupancy of said premises, and the title to One-Fifth of the premises would revert to Henry A. Krebs and his heirs."

A hearing on the petition for condemnation was held in the district

court and appearances were made by attorneys representing the State of Minnesota; Independent School District No. 31; and the named appellants. At that time the attorney appearing in behalf of appellants stated to the court: "We * * * have no objection to the condemnation proceeding * * * excepting if it takes our title away and we are agreeable to the state condemning the property." By order of the court, the petition for condemnation was then allowed and commissioners were appointed to report the damages sustained by the owners on account of the taking. Thereafter, upon petition of Independent School District No. 31, appellants were ordered to show cause why an award of $87,053[1] made by the commissioners and deposited by the state with the clerk of the district court should not be paid over to the school district. An answer to the order to show cause was served by appellants admitting that no objection had been interposed to the granting of the petition for condemnation but alleging that the successors in interest of Henry A. Krebs were entitled to one-fifth of the damages which had been awarded. This pleading further alleged that the proceedings in condemnation had been "arranged for" by Independent School District No. 31 for the sole purpose of eliminating the interest of said Henry A. Krebs after prior negotiations between the school district and the administration of Bemidji State College in contemplation of purchase had failed.

Hearing on the order to show cause was held and upon the evidence adduced the following findings of fact, now contested by appellants, were made:

"That from and after the 30th day of October, 1929, and at all times herein material, said Parcel No. 1 was used by Independent School District No. 31 and its predecessor Independent School District No. 7, as an athletic field and playground for the benefit of the school children

---

[1] By agreement all but the $20,000 held by the clerk pending determination of the present controversy was paid over to the school district. Prior deeds from four of the five original grantors or their heirs gave the respondent ownership of four-fifths of Parcel No. 1 in fee simple absolute. Therefore, only one-fifth of the amount awarded is affected by the present dispute.

of said school district and since said date has never been used, in whole or in part, for any other purpose.

"That from and after the 30th day of October, 1929, and at all times herein material, said Independent School District No. 31 and its predecessor, Independent School District No. 7, have had a need for an athletic field for the children of said School District and at the time of the taking by these condemnation proceedings of said Parcel No. 1 there was no intent to abandon the use of same as an athletic field or to put it to any other use than [as] an athletic field and playground for the children of said school district.

"That the proceedings in condemnation were not arranged for by respondent, Independent School District No. 31.

"That said condemnation proceedings were instituted and carried out for the sole purpose of acquiring an athletic field for the Bemidji State College."

■ In our opinion, these findings are amply sustained by the evidence. J. W. Smith, Bemidji superintendent of schools, testified that the realty in question had been used exclusively as an athletic field and that at the time of the taking by the state there was no intention of abandonment. He conceded that the land was sometimes used for softball games and that of the teams that played, "some of the individual members had finished school." Mr. Smith also said that, acting for the school district, he had secured quitclaim deeds from four of the original five grantors of the realty, or their heirs, in 1955 and 1956 and that there had been discussions prior to the condemnation between representatives of Bemidji State College and himself involving the possibility of acquisition of the athletic field by the state for the use of the college. The net result of these conversations was that the school district voiced no serious objection to the loss of its athletic field if the compensation allowed was in an amount sufficient to duplicate the field on property "directly in back of the present high school." In this connection he testified:

"* * * [F]rom my point of view the high school needs an athletic field. We have got to have one and there is no way that we can do without one and we had one up to about the first of July with which we were very well satisfied; we used it to the fullest extent, we in-

vested quite a bit of money in it and it was working out quite nicely for our purpose. If the college hadn't started condemnation proceedings, we would still have it with no idea of ever giving it up."

He gave this description of the facility:

"The field was well watered with a water system, it had an athletic field house on it, cement tennis courts and it—we converted it into a skating rink in the wintertime so that it was used primarily the entire year around for athletic purposes and then we had wrestling in the field house during the past two winters."

Charles R. Sattgast, president of Bemidji State College, testified that he had appeared before the committees of the legislature prior to the condemnation and recommended that the sum of $90,000 be appropriated so that the school district's athletic field could be acquired for the college. His testimony includes this answer:

"Q. Now, doctor, you at all times proceeded with the understanding that you were going to have to go to the State of Minnesota to condemn this property in order to get it, is that right?

"A. The information that we obtained was that it was the only way that it would be possible to get it because it could not be sold."

The tract involved was of particular interest to Bemidji State College, according to Dr. Sattgast, because of its proximity to the present site of the fieldhouse used by that institution.

We believe that the evidence which has been outlined supports, if it does not compel, the findings of fact made by the trial court.

■ The contested conclusions of law include the following:

"That said possibility of reverter of an undivided 1/5 interest in said Parcel No. 1 held by H. A. Krebs and Gondeborg C. Krebs, husband and wife, and their heirs, was the mere naked possibility which would only ripen into an estate of value upon the abandonment of use of Parcel No. 1 for school purposes or play ground and there was no imminency or probability of such abandonment and said possibility of reverter was of no monetary value at the time of the taking in this condemnation proceedings by the State of Minnesota.

"The condemnation proceedings were valid, and were instituted and carried out for the sole purpose of acquiring an athletic field for the Bemidji State College."

The validity of the condemnation proceedings was repeatedly conceded by appellants before the district court and objection to the proceedings, as such, was waived. For this reason no discussion of that phase of the matter is required.

■   There remains the important question of whether appellants are entitled to all or any part of the award based on the possibility of a reverter of a one-fifth interest in the fee should the realty cease to be used "as an athletic field and playground for the benefit of the school children" of the school district.

The position of appellants before the trial court was that they, as successors in interest of Henry A. Krebs, were entitled to one-fifth of the amount awarded either because the use of the realty as an athletic field and playground as specified in the deed had been discontinued prior to the inception of the condemnation proceedings or as a result thereof. As previously stated, the finding of the trial court that the use of the realty for the purposes specified in the deed had continued until the time of the taking by the state is supported by the evidence. Obviously, the condemnation of the tract by the state made impossible the continued use of the field for the purposes specified in the deed. However, it is uniformly held that realty does not revert where the use specified in the deed is discontinued solely because of a taking under the power of eminent domain.[2] There is no Minnesota

---

[2]People v. City of Los Angeles, 179 Cal. App. (2d) 558, 4 Cal. Rptr. 531, appeal dismissed sub nom. Griffith v. California, 364 U. S. 476, 81 S. Ct. 243, 5 L. ed. (2d) 221, rehearing denied, 365 U. S. 805, 81 S. Ct. 466, 5 L. ed. (2d) 462; City of Santa Monica v. Jones, 104 Cal. App. (2d) 463, 232 P. (2d) 55; Romero v. Department of Public Works, 17 Cal. (2d) 189, 109 P. (2d) 662; Lyford v. City of Laconia, 75 N. H. 220, 72 A. 1085, 22 L. R. A. (N.S.) 1062; United Baptist Convention v. East Weare Baptist Church, 103 N. H. 521, 176 A. (2d) 325; State v. Cooper, 24 N. J. 261, 131 A. (2d) 756, certiorari denied sub nom. Cooper v. New Jersey, 355 U. S. 829, 78 S. Ct. 41, 2 L. ed. (2d) 42; First Reformed Dutch Church v. Croswell, 210 App. Div. 294, 206 N. Y. S. 132; Matter of City of New York (Public Park—

decision directly in point, but we believe the law to be correctly enunciated by those courts holding that the taking by the state does not cause a reversion of the title.

■ No attempt was made by appellants to establish the value of the possibility of reverter immediately prior to the taking. Nevertheless, having in mind that we have no discussion of this important problem in our decisions, we believe that consideration should be given to this aspect of the matter.

Prior to the promulgation of the Restatement of the Law of Property in 1936, the general rule applied with respect to the value of the possibility of reverter extinguished by condemnation proceedings was as stated in the leading case of Chandler v. Jamaica Pond Aqueduct Corp. (1878) 125 Mass. 544, 547:

"* * * The grantor [of a fee simple determinable] has no subsisting title in the land, but only a possibility that it may revert to him by the happening of the event upon which it is determinable. He is not, * * * a person * * * whose land is taken by the respondent. His possibility of interest is too remote and contingent to be the subject of an estimate of damages by a jury."[3]

With the passage of time, however, there developed "an awareness that future interests in property have not received the protection that they should in eminent domain proceedings." United Baptist Convention v. East Weare Baptist Church, 103 N. H. 521, 524, 176 A. (2d)

---

Cortelyou Claim), 265 App. Div. 875, 38 N. Y. S. (2d) 25, appeal denied, 265 App. Div. 954, 39 N. Y. S. (2d) 606, affirmed, 291 N. Y. 501, 50 N. E. (2d) 645; Carter v. New York Cent. R. Co. 73 N. Y. S. (2d) 610, affirmed, 273 App. Div. 884, 77 N. Y. S. (2d) 265, affirmed, 298 N. Y. 540, 80 N. E. (2d) 671; People of Puerto Rico v. United States (1 Cir.) 132 F. (2d) 220, certiorari denied, 319 U. S. 752, 63 S. Ct. 1165, 87 L. ed. 1706. Contra, Lancaster School Dist. v. Lancaster County, 295 Pa. 112, 144 A. 901.

[3]See, as illustrative of the rule before the Restatement, Scovill v. McMahon, 62 Conn. 378, 26 A. 479, 21 L. R. A. 58, 36 A. S. R. 350; State ex rel. Sayers v. School Dist. 143 Mo. 89, 44 S. W. 720; Lyford v. City of Laconia, *supra*; First Reformed Dutch Church v. Croswell, *supra*; Carter v. New York Cent. R. Co. *supra*.

325, 327.[4] This concern for the rights of the owner is reflected in the comments and illustrations appearing in Restatement, Property, § 53, *comment a,* reading, so far as now pertinent, as follows:

*"The total award made in an eminent domain proceeding to all persons having interests in land in which there is an estate in fee simple defeasible is the value of an estate in fee simple absolute in such land.* When land ownership is split into an estate in fee simple defeasible and a future interest, a private purchaser of an estate in fee simple absolute therein must deal with two sellers. The result is that he may acquire the two interests for less than the value of an estate in fee simple absolute in the same land, or he may be compelled to pay a higher price. This uncertainty does not exist when the estate in fee simple absolute is acquired in an eminent domain proceeding. The condemning party is generally privileged to join in a single proceeding all persons having estates or interests in the affected land. Correlatively, it is the general rule that all persons having interests in land which has been appropriated, or is about to be appropriated, are privileged to unite in a single proceeding to obtain compensation for the land taken. An occasional statute explicitly makes these privileges, also duties. Thus *the procedure, in the absence of a specifically inconsistent statute, is to fix a lump sum value for the estate in fee simple absolute and then to take up the distribution of this sum among the persons having interests in the affected land."* (Italics supplied.)

The process visualized by this Restatement comment is the one which has been followed in the instant case. See, Seabloom v. Krier, 219 Minn. 362, 18 N. W. (2d) 88. The state has acquired all estates or interests in the affected land for the sum of $87,053. The award in condemnation fixes the value of the totality of the interests at the time of the taking, with the problem of distributing this sum among the persons having such estates or interests being left to the court.

---

[4]For detailed discussion of the problem arising where future interests are taken by condemnation, see 2 Nichols, Eminent Domain (3 ed.) § 5.221; Stoyles, *Condemnation of Future Interests,* 43 Iowa L. Rev. 241; Note, 20 Minn. L. Rev. 315; Note, 34 Mich. L. Rev. 530; Note, 46 Cornell L. Q. 631; Note, 29 Calif. L. Rev. 525.

94

By statute and decision an amount paid into court in condemnation proceedings is to be distributed to the persons entitled to receive it in such proportion as the value of the estate and interest of such persons bears to the total value of the realty.[5]

The Restatement in further comments to § 53 recommends as a solution of the perplexing problem created when one of the interests taken is a possibility of reverter the following rules:

*Comment b.* "If, viewed from the time of the commencement of an eminent domain proceeding, and not taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding, the event upon which a possessory estate in fee simple defeasible is to end is *an event the occurrence of which, within a reasonably short period of time, is not probable,* then the damages for a taking thereof by an eminent domain proceeding are ascertained as though the estate were a possessory estate in fee simple absolute and the entire amount thereof is awarded to the owner of the estate in fee simple defeasible. Under these circumstances the future interest has no ascertainable value." (Italics supplied.)

*Comment c.* "If, viewed from the time of the commencement of an eminent domain proceeding, and not taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding, the event upon which a possessory estate in fee simple defeasible is to end is an event the occurrence of which, *within a reasonably short period of time, is probable,* then the amount of damages is ascertained as though the estate were a possessory estate in fee simple absolute, and the damages, so ascertained, are divided between the owner of the estate in fee simple defeasible and the owner of the future interest in such shares as fairly represent the proportionate value of the present defeasible possessory estate and of the future interest." (Italics supplied.)

---

[5]Minn. St. 117.10 relates to the distribution of a deposited award. Minnesota decisions on the point include Seabloom v. Krier, 219 Minn. 362, 18 N. W. (2d) 88; Kafka v. Davidson, 138 Minn. 301, 164 N. W. 980; and Eyre v. City of Faribault, 121 Minn. 233, 141 N. W. 170, L. R. A. 1917A, 685.

The formula of the Restatement of Property has been quite generally accepted in the decisions of other courts which have considered the problem since 1936.[6] In most instances, the appellate courts have concluded, as did the trial court in this case, that the event upon which the possessory estate in fee simple defeasible is to end was an event the occurrence of which within a reasonably short period of time was not probable; that the future interest, therefore, had no ascertainable value; and the owner of the fee simple determinable was entitled to the full amount of the award.[7] The decision of the court below, therefore, is fully supported by the rule of the Restatement and the decided cases.

■ It is our belief, however, that the owner of the future interest is not adequately protected by a rule which permits acquisition of this interest in condemnation proceedings without compensation except in cases where the event determining the fee is imminent. The constitution of Minnesota provides that property shall not be taken for public purposes without just compensation.[8] The owner of a possibility of reverter has an alienable interest in real estate.[9] In all cases, therefore, some amount, however nominal, should be allowed to the owner of a possi-

---

[6]Specific reference to § 53 has been made in the following cases: Terminal Coal Co. v. United States (3 Cir.) 172 F. (2d) 113; Beard's Erie Basin v. People of New York (2 Cir.) 142 F. (2d) 487; People of Puerto Rico v. United States, *supra*; United States v. 16 Acres of Land (D. Mass.) 47 F. Supp. 603; United States v. 1119.15 Acres of Land (E. D. Ill.) 44 F. Supp. 449; United States v. 2,184.81 Acres of Land (W. D. Ark.) 45 F. Supp. 681; City of Santa Monica v. Jones, *supra*; United Baptist Convention v. East Weare Baptist Church, *supra*.

[7]Disallowance of any damage to the owner of the possibility of reverter is supported by the following cases which acknowledge the Restatement formula: Terminal Coal Co. v. United States, *supra*; City of Santa Monica v. Jones, *supra*; Beard's Erie Basin v. People of New York, *supra*; People of Puerto Rico v. United States, *supra*; United States v. 16 Acres of Land, *supra*; United States v. 1119.15 Acres of Land, *supra*.

[8]Minn. Const. art. 1, § 13, provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

[9]See Consolidated School Dist. No. 102 v. Walter, 243 Minn. 159, 66 N. W. (2d) 881, 53 A. L. R. (2d) 218, where Mr. Chief Justice Dell discusses the nature of this interest in lucid detail.

bility of a reverter when his interest is extinguished by condemnation. See, Woodville v. United States (10 Cir.) 152 F. (2d) 735, certiorari denied, 328 U. S. 842, 66 S. Ct. 1021, 90 L. ed. 1617.

In some situations the possibility of reverter may have more than nominal value. The measure of damages for the taking of the totality of the estates or interests in the land affected by condemnation proceedings is the fair and reasonable market value of such land and, in arriving at this judgment, consideration may be given to that use of the realty involved for which it is best adapted.[10] It is entirely possible that the use to which a fee simple determinable must be limited to avoid reversion is its highest and best use within the meaning of this rule. And in such event, allowance of nominal damages for the extinguishment of the possibility of reverter would be reasonable if there is no likelihood that the use to which the land is restricted will be discontinued by the owner of the fee simple determinable. It is possible, however, that an owner of the totality of the estates or interests in the real estate could make practical use of it for purposes which could give to it a reasonable market value higher than that possible when devoted to the restricted uses specified in the deed of conveyance creating the determinable fee. In such event, the award in condemnation will reflect this additional increment of value since, as stated, the amount allowed is the market value of the

---

[10]See, In re Appropriation of Easement for Highway Purposes, 169 Ohio St. 291, 159 N. E. (2d) 612, 75 A. L. R. (2d) 1373; Illinois Light & Power Co. v. Bedard, 343 Ill. 618, 175 N. E. 851; Matter of Niagara, L. & O. Power Co. v. Horton, 231 App. Div. 402, 247 N. Y. S. 761; Wood v. County Court, 100 W. Va. 29, 129 S. E. 747. See McCormick, *The Measure of Compensation in Eminent Domain,* 17 Minn. L. Rev. 461, in which Professor McCormick states that the "[f]air market value of the land for its highest and best available use is said to be the measure of compensation." In In re Appropriation of Easement for Highway Purposes, 169 Ohio St. 291, 297, 159 N. E. (2d) 612, 616, the Supreme Court of Ohio also stated that "since a land appropriation proceeding is essentially an appropriation of physical property and not merely the rights of persons, the value of the property as a whole is to be determined first without regard to what may be the interest of ownership therein, and * * * the determination of the extent of those interests of ownership is a matter of no concern to the appropriator * * *."

realty when devoted to its best practicable use. In this situation, as well as in the case where the restricted use is about to be abandoned, the owner of the possibility of reverter will be entitled to substantial damages. Under ordinary circumstances the relative value of the fee simple defeasible and the possibility of reverter can best be determined by a jury basing its judgment upon the opinion of experts proceeding from the factual foundation that applies in the particular case. Opinions as to the value of the fee simple determinable rendered in such instance will depend in part on the likelihood of continued use of the realty by the owner of the fee simple defeasible for the purpose specified in the instrument of conveyance and in part on the reasonable market value of the real estate, as improved, for the purposes to which it is devoted. If this value is *equal to or greater than* the market value of the realty if used for other practicable purposes, the owner of the fee simple determinable is entitled to the full amount of the award less some nominal amount—1 percent of the sum awarded, for example—to be allocated to the owner of the possibility of reverter. If the value so fixed, in cases where abandonment of the use is imminent or where the realty would have a greater market value if devoted to some other practicable purpose, is *less* than the totality of the value, the owner of the possibility of reverter shall be entitled to a proportion of the condemnation award expressed by a fraction the denominator of which is the market value of the realty when devoted to its best practicable use and the numerator of which is the difference between such value and the value of the realty applied to the uses to which it is restricted by the terms of the deed for such period of time as such use is reasonably to be anticipated.[11]

---

[11] *Illustration 1.* Assume:

A. Reasonable market value of land if applied to highest and best use ......................................................................................... $100,000
B. Reasonable market value of land if used as a high school athletic field for such period as continued use for that purpose is reasonably to be anticipated ...................................................................................$75,000
Ratio by which distribution of award is made is 1:3, with 1/4 of the award payable to owner of the possibility of reverter and 3/4 to the owner of the fee simple determinable.

Because of the fact that the decision of the trial court is in conformity with the evidence presented to it and with the previously defined rules of law applying in such instances, the order from which the appeal is taken is affirmed. However, because the problem presented is novel in this state and the right of the appellants to just compensation is one founded upon constitutional guarantees, this decision is without prejudice to the right of appellants to apply to the court below within 30 days from the filing of this decision for further hearing with respect to the proper allocation of the sum allowed as damages in the condemnation proceedings. If appellants conclude that they are entitled to more than nominal damages within the rules outlined above, their application for reconsideration of the problem of allocation should be supported by a prima facie showing which would support an award of a substantial part of the sum involved. If such a showing is made, the trial court in all probability will submit the value problem to a jury for its determination. If proof of substantial damages is not possible, the trial court may, upon such application, allow nominal damages to avoid extinguishment of appellants' interest without recognition of the existence of their right to compensation.

Affirmed and remanded for further proceedings consistent with this opinion.

*Illustration 2.*

Assume the value determined under (A) above is $75,000 or less and the value under (B) above remains the same. In such event the owner of the determinable fee would be entitled to the entire award minus an allowance to the owner of the possibility of reverter as nominal damages.

In cases where, as here, the award of the appraisers is accepted without appeal and held for distribution, it is conceivable that in Illustration 1 above, the values found with respect to (A) or (B) or both would be higher than the total amount of the award to be divided. This would not affect the division because the distribution is to be made in terms of the ratio obtained regardless of the amount to be distributed. This problem would not arise in cases where, upon appeal from an award of appraisers, the amount to be allowed as damages for the taking and the value determinations illustrated by (A) and (B) above are decided by the same jury.

As applied to the instant case, the distribution of the award would also reflect the fact that the appellants have only a one-fifth interest in the possibility of reverter.