Ink et al., Appellants, *v.* City of Canton et al., Appellees.

(No. 39208—Decided December 15, 1965.)

*Messrs. Black, McCuskey, Souers & Arbaugh* and *Mr. Albert B. Arbaugh,* for appellants.

*Mr. Harold E. DeHoff,* city solicitor, for appellees.

TAFT, C. J. Plaintiffs contend that acts of the city before the appropriation proceedings breached the conditions of the

deeds and caused a reverter of all or at least part of the Ink Park property at that time. There is no basis for such a contention on the facts as found by the Court of Appeals. We are satisfied that there is sufficient evidence in the record to support those findings of fact.

Plaintiffs' other contentions raise questions as to the effect of the state's appropriation of a substantial part of the Ink Park property on the respective rights of the city and of the plaintiffs to (1) the portion of that property still usable for park purposes and (2) the money paid by the state for the portions thereof appropriated and for damages to the residue.

Until the latter part of the Nineteenth Century, there were no reported cases which dealt with such questions. See Courter and Maskery, The Effect of Condemnation Proceedings upon Possibilities of Reverter and Powers of Termination, 38 University of Detroit Law Journal (1960) 46, 47.

Where property is conveyed in fee with a proviso that it is to be used only for a specified use and that the property shall revert to the grantor if such specified use ceases, it would appear reasonable to conclude. that the property would so revert when its appropriation by eminent domain proceedings prevents that specified use. Such a conclusion would appear to be especially reasonable where, as in the instant case, the grantee paid nothing for what had been conveyed to him. A few cases have so held. *Crowl, Admr.,* v. *Tidnam* (1947), 198 Okla. 650, 181 P. 2d 549; *Lancaster School District* v. *Lancaster County* (1929), 295 Pa. 112, 144 A. 901; *Pedrotti* v. *Marin County* (CCA 9-1946), 152 F. 2d 829. However, the great weight of authority has held that there is no reverter in such an instance, and that the grantee takes the whole of the amount paid for the property appropriated. Courter and Maskery, *supra;* 46 Cornell Law Quarterly (1961) 631 *et seq.*; The Value of Possibilities of Reverter and Powers of Termination in Eminent Domain, Illinois Law Forum (1963) 693; Condemnation of Future Interests (1962), 48 Virginia Law Review 461, 472 *et seq.*; Condemnation of Future Interests (1958), 43 Iowa Law Review 241, 247.

This court's opinion in *Board of County Commissioners* v. *Thormyer, Dir.* (1959), 169 Ohio St. 291, 159 N. E. 2d 612, 75 A. L. R. 2d 1373, recognizes that such a holding may give a

windfall to the grantee. He not only gets the value of what he had, *i. e.*, the value of the property with the restriction as to its use, but he gets what may be a greater value that the property would have without any such restriction. At the same time, the grantor's right of reverter is destroyed and he gets nothing for it.

There may be some justification for such a conclusion where the grantee paid the grantor the full value of the property for the determinable fee. In such an instance, giving the grantor any part of the eminent domain award would represent a windfall to the grantor. Also, since the grantee would have paid the full value of the property, it is reasonably arguable that giving the whole of the award to the grantee would give him the value of no more than what the grantee had paid for when he acquired the determinable fee. See concurring opinion in *McMechan* v. *Board of Edn. of Richland Twp.* (1952), 157 Ohio St. 241, 253, 105 N. E. 2d 270. However, where, as in the instant case, the grantee paid nothing to the grantor for the determinable fee, it seems apparent that, at the very least, the amount, if any, by which the value of an unrestricted fee exceeds the value of the restricted fee, is something that should go to the grantor. Before the appropriation, the grantee had no right to the greater value of the property, if it had a greater value without the restrictions imposed upon the grantee. The difference between that greater value and what the grantee lost as a result of the appropriation, *i. e.*, the value of what the grantee had, would seem logically to belong to the grantor. That difference certainly represents the value of something which the grantor expressly refrained from conveying to the grantee. Where the amount of that difference can be determined, as it frequently can, and where the grantee had paid nothing for his determinable fee, there would appear to be no basis whatever for the reason usually advanced for giving the whole of the award in the appropriation proceedings to the grantee. That reason is that the right of reverter of the grantor is too remote and contingent to be capable of valuation.

The other reason sometimes advanced for giving the whole of the appropriation award to the grantee is that, since the law (*i. e.*, the legal taking in eminent domain) has made it impossi-

ble to perform the condition under which the property is held, performance of that condition is excused. This is a statement of the conclusion reached rather than any reason for reaching that conclusion. The most that might be said for such a conclusion is that the provision for reverter on breach of the condition as to use is intended by the grantor to compel the grantees to make the specified use of the property. After the property is appropriated in eminent domain proceedings, such provision can no longer have any influence in compelling such use. Hence, the only justification for its existence has disappeared. However, this does not represent a reason for giving the grantee the value of something he has not lost (*i. e.*, the amount, if any, by which the value of the property taken exceeds its lesser value for the restricted use that the grantee could have made of it) where the grantor expressly refrained from conveying that something to him.

As stated in Simes and Smith, Law of Future Interests, 2 Ed. (1956) Section 2013:

"* * * in the usual case the testator [grantor] neither thought of eminent domain nor provided therefor. Now, in fact it may be said that in most other cases of impossibility, the testator [grantor] did not foresee the situation which occurred, nor provide for it; and that is probably true. But it does not follow that this should be treated like the ordinary case of an impossible condition subsequent. It must be remembered that in the usual case the court must give the property either to the devisee [grantee] or to the devisor's [grantor's] heirs. There is no third alternative; whereas in the eminent domain case, the court may divide the award between them."

Also, Courter and Maskery, The Effect of Condemnation Proceedings upon Possibilities of Reverter and Powers of Termination (1960), 38 University of Detroit Law Journal 46, 54, states:

"* * * in the ordinary impossibility situation where a supervening instrumentality has made performance of a condition impossible, there can be no weighing of the respective interests of grantor and grantee, for the realty, as realty, must be awarded to the prevailing party. However, in a condemnation situation, the parties are not contending over an indivisible par-

cel of real estate but rather over a sum of money which can be divided between the parties if necessary in the interest of substantial justice. * * *''

In apparent recognition of the harshness of the majority rule giving the whole of the appropriation award to the owner of the determinable fee and nothing to the owner of the right of reverter, the American Law Institute Restatement of the Law of Property (1936) 188, Section 53, comment C, provides for a division of the eminent domain award between the owner of that determinable fee and the owner of the right of reverter where, ''viewed from the time of commencement of an eminent domain proceeding, and not taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding, the event upon which the possessory estate in fee simple [determinable fee] is to end is an event the occurrence of which, within a reasonably short period of time is probable.'' Although not supported by any authority prior to its promulgation in 1936, this rule has received some support. See annotation, 81 A. L. R. 2d 568, entitled ''Rights in Condemnation Award where Land Taken was Subject to Possible Rights of Reverter or Re-entry,'' which endeavors to explain the authorities with reference to this rule.

In the instant case, there was no event imminent, other than the impending appropriation proceedings, that could amount to a failure to use the Ink Park property for the purposes specified in the deeds conveying it to the city. Hence, this rule of the Restatement would not be applicable in the instant case. However, this limited departure by the Restatement and the authorities following it from the harsh majority rule, giving the whole of the appropriation award to the owner of the determinable fee, encourages us to consider whether some greater departure from that harsh rule should be made in the instant case.

We have already pointed out that the grantee paid nothing to the grantor for the determinable fee involved in the instant case; and that the reasons for giving any of the eminent domain award to the grantee are not the same in such a situation as where the grantee paid for what was conveyed to him.

There is another significant and, we believe, a decisive fac-

58

tor that should be considered in the instant case. The deeds conveying Ink Park to the city expressed an intention to impose upon the city a duty to use the property conveyed "as and for a public park * * *" to "be known and designated as" Ink Park. By accepting that conveyance, the city undertook a fiduciary obligation to use such property only for such purpose. *Ohio Society for Crippled Children and Adults, Inc.,* v. *McElroy, Atty. Genl.* (1963), 175 Ohio St. 49, 191 N. E. 2d 543, 100 A. L. R. 2d 1202. Thus, until a court of equity in appropriate proceedings may give authority to do otherwise, the city must hold any interests in the Ink Park property not taken from it subject to the fiduciary obligations imposed upon it by the two deeds conveying that property to the city. See *Ohio Society for Crippled Children and Adults, Inc.,* v. *McElroy, Atty. Genl. supra,* at page 54. Likewise, whatever money the city receives in the eminent domain proceedings for the Ink Park land taken or on account of damages to the Ink Park land not taken can only be held by the city so long as it proposes to use, can reasonably use, and does use that money for Ink Park purposes; and any of that money which the city either does not propose to use, cannot reasonably use, or does not use for Ink Park purposes should revert to the plaintiffs. Such a conclusion is supported by *In re Application of County of Westchester* (1935), 243 App. Div. 706, 277 N. Y. Supp. 26, affirmed, 268 N. Y. 560, 198 N. E. 404; and *State* v. *Federal Square Corp.* (1938), 89 N. H. 538 3 A. 2d 109. See *United Baptist Convention of New Hamshire* v. *East Weare Baptist Church* (1961), 103 N. H. 521, 176 A. 2d 325; *Lutes* v. *Louisville & Nashville Rd. Co.* (1914), 158 Ky. 259, 164 S. W. 792; *County of New Haven* v. *Parish of Trinity Church* (1909), 82 Conn. 378, 73 A. 789; 17 Ann. Cas. 432; Courter and Maskery, The Effect of Condemnation Proceedings upon Possibilities of Reverter and Powers of Termination (1960), 38 University of Detroit Law Journal 46, 51, 52, 55; Browder, The Condemnation of Future Interests (1962), 48 Va. Law Review 461, 472; Hill, The Value of Possibilities of Reverter and Powers of Termination in Eminent Domain, Illinois Law Forum (1963) 693,697.

It follows that so long as the city proposes to, can reasonably and does use for Ink Park purposes the part of the Ink

Park property not taken in eminent domain proceedings and the money it receives for the Ink Park land taken and on account of damages to such land not taken, neither such land nor money will revert to plaintiffs although plaintiffs will retain their rights of reverter both with respect to that land and that money.

However, for reasons hereinbefore stated, since the money paid for the land taken in the eminent domain proceedings represents its value for any use and the conveyance to the city was for a specific use only, the amount, if any, by which the value of that land for any use exceeds its value for the specific use only should be paid to the plaintiffs. The grantor never intended to convey for park or any other purposes the interests in the Ink Park property represented by such difference between its unrestricted value and its value for the uses specified in the two deeds.

We recognize that the principal reasons given by the Common Pleas Court judge for his judgment in *Cincinnati* v. *Babb* (1893), 4 Ohio Decisions 464, are inconsistent with our foregoing conclusions with respect to the respective rights of the city and plaintiffs in and to the money received in the eminent domain proceedings for the parts of Ink Park land taken and for damages to the residue not taken. We have hereinbefore explained our disagreement with such reasons. The *Babb case* judgment was affirmed without opinion by the Circuit Court, and this court affirmed the judgment of the Circuit Court without opinion, 55 Ohio St. 637. In doing so, this court avoided expressing any approval or disapproval of the reasons given by the Common Pleas Court. We likewise avoided doing so in *Board of County Commissioners* v. *Thormyer, Dir, supra* (169 Ohio St. 291), 296. The *Babb case* judgment may have been affirmed by this court for reasons other than those given by the Common Pleas Court judge in his opinion. From the report of the case, it appears that a corner lot had been given to a church and "the city * * * appropriated a strip from the side * * * to widen the street." The Common Pleas Court stated that "the change of occupancy is not such an altered possession as to deprive the church of light and air and increased facilities of access." Our court may therefore have

affirmed because there was no substantial "use for other than church purposes" and because the Common Pleas Court stated that "the [$1000.00] proceeds, of course, are held in trust for church purposes." However, to the extent that our silent decision in that case may have held that the grantor had, as the common pleas judge stated, "no legal interest in the enforcement of the trust, nor any reversion in the money," it is inconsistent with our conclusions and must be overruled.

Although cases such as *Doan* v. *Cleveland Short Line Ry. Co.* (1915), 92 Ohio St. 461, 112 N. E. 505; *Ward* v. *Cleveland Ry. Co.* (1915), 92 Ohio St. 471, 112 N. E. 507; and *Norfolk & Western Ry. Co.* v. *Gale* (1928), 119 Ohio St. 110, 162 N. E. 385, do involve the appropriation by eminent domain of property subject to use restrictions, they are not helpful with respect to the problems involved in the instant case because they do not involve rights of reverter for failure to comply with those use restrictions.

Part of the eminent domain award is for structures taken. To the extent that this part of the award represents payment for structures built by the city, this part should go to the city without being subject to any fiduciary obligation imposed by or right of reverter provided for in the deeds conveying Ink Park to the city.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals for further proceedings in accordance with this opinion.

*Judgment reversed.*

ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.