BOARD OF TRANSPORTATION, PLAINTIFF v. CHARLOTTE PARK AND RECREATION COMMISSION; A. L. PURRINGTON, JR.; JOSEPH B. CHESHIRE, JR.; HENRY HAYWOOD, JR., TRUSTEES OF THE DIOCESE OF NORTH CAROLINA OF THE PROTESTANT EPISCOPAL CHURCH; RT. REV. THOMAS A. FRAZIER, BISHOP OF THE DIOCESE OF NORTH CAROLINA OF THE PROTESTANT EPISCOPAL CHURCH, DEFENDANTS

No. 7826SC59

(Filed 21 November 1978)

1. **Deeds § 15— restriction on use of land—decision to condemn—separate municipal entities**

   The Charlotte Park and Recreation Commission and the City of Charlotte were separate entities so that a decision by the City to condemn for a street project a portion of land conveyed to the Commission for use only as a park was not in effect a decision by the Commission to alter the use of the land which would bring the restrictive clause of the deed into play.

2. **Deeds § 15; Eminent Domain § 16.1— compensation for condemnation—owner of right of re-entry**

   The owner of a right of re-entry for breach of condition has no compensable interest in a condemnation award if the fee owner had no intention to abandon the permitted use of the property.

APPEAL by defendants from *H. Martin, Judge*. Order entered 31 October 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 19 October 1978.

On 19 November 1973 the State Board of Transportation brought this action to determine just compensation for a tract of land it had condemned. Both the Charlotte Park and Recreation

Commission (Commission) and the trustees and bishop of the Diocese of North Carolina of the Protestant Episcopal Church (Diocese) filed answers; each denied that the other had any interest in the property. The Commission moved for the court to determine the issue between it and the Diocese. as to which was entitled to any damages awarded in the condemnation action.

The parties stipulated that the property in question had been conveyed for a consideration of $2500 to the Commission in 1943 by the Diocese and the Thompson Orphanage and Training Institution. By the terms of that deed, the property was to be used only as a park, and "[i]f the [Commission], its successors or assigns, fails to continue to use said property for playground purposes then, in that event, before said property can be used for any other purpose it must be offered in writing to the [grantors] at a purchase price of Twenty-five Hundred ($2500.00) Dollars, without interest thereon. . . ." Since the conveyance, the Commission has operated the Pearl Street Park on the property.

On 8 July 1971, the Commission informed the Diocese that the City of Charlotte had indicated its intention to acquire part of the property by condemnation for street relocation. On 16 July 1972 the City of Charlotte and the State Highway Commission entered into an agreement that the State would acquire the necessary right-of-way for the street relocation project and the City would reimburse the State for 1/3 of its expenditures.

At the hearing on its motion, the Commission presented the affidavits of three of its members that the land involved had been continuously used as a park, and that as of the date of the condemnation suit the Commission had no intention to cease using it as such. The trial court found that the Commission was the only party having an interest in the condemned land and that it was entitled to the entire condemnation award. The Diocese appeals.

*Moore & Van Allen, by James O. Moore and Jeffrey J. Davis, for defendant appellants.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage and Preston, by William L. Rikard, Jr., for defendant appellees.*

ARNOLD, Judge.

[1]   The Diocese first argues that the Commission and the City of Charlotte were not separate entities, and therefore a decision by the City to condemn the park land for street relocation was in effect a decision by the Commission to alter the use of the land, bringing the restrictive clause of the deed into play. In connection with this argument the Diocese asserts that the City is merely trying to avoid its obligations by agreeing with the State for the State to condemn the property. We disagree on both points.

The Commission was not, as the Diocese argues, merely an alter ego of the City of Charlotte. The Commission was created in 1927 by an act of the General Assembly, Chapter 51, Private Laws of the State of North Carolina, Session 1927, and is a separate public entity. The General Assembly continued the existence of the Commission as a public corporate body in 1965. Ch. 713, Ch. V, Subch. C, 1965 Session Laws of North Carolina. The excerpts from the Charter of the City of Charlotte introduced by the Diocese at the hearing on the motion merely copy verbatim from the 1965 Session Laws and recognize the existence of the Commission as already created.

Since the Commission was an entity separate from the City of Charlotte, it is irrelevant here whether it was the City or the State that brought the condemnation action. However, we do not agree with the contention of the Diocese that the agreement between the City and the State, whereby the State would acquire the necessary property for the street relocation, was a sham. It is clear that the State intended to construct a highway project, and the City agreed to pay part of the expenses of the project because of the benefits it would receive.

Our determination that the City and the Commission were separate entities also negates the contention of the Diocese that it is entitled to the condemnation proceeds because the Commission intended to cease using the property for a park. The only evidence offered in support of that position was that the *City* planned to condemn the property for a street project. The intentions of the City are not imputed to the Commission. Moreover, three members of the Commission testified that there was no intention to abandon the park at all. Our Supreme Court in *Charlotte v. Recreation Commission*, 278 N.C. 26, 178 S.E. 2d 601

(1971), indicated that where the conveyance was a fee simple determinable with a possibility of reverter, "[t]he taking of the land under the power of eminent domain does not . . . cause a reversion of the title to the grantor. . . ." *Id.* at 32, 178 S.E. 2d at 605.

Even if it is not entitled to the entire condemnation award, the Diocese argues that it is at least entitled to the difference between the fair market value of the property restricted for park use and the fair market value of the property unrestricted. In disputing this issue, each party relies on *Charlotte v. Recreation Commission, supra,* for its respective position, but that case is not on point. At issue in that case was the method of measuring damages; title to the condemnation award was not disputed.

[2]   As the Diocese admits, the weight of authority is that the owner of a right of re-entry for breach of condition has no compensable interest in a condemnation award if the fee owner had no intention to abandon the allowed use of the property. 27 Am. Jur. 2d, Eminent Domain § 251. Exceptions to this rule have generally occurred in situations where the vested future interest had some special value to its owners, see 81 A.L.R. 2d 575, which is not the case here. However, in support of its rationale, the Diocese cites two cases which go against the weight of authority. The first, *Ink v. City of Canton,* 4 Ohio St. 2d 51, 212 N.E. 2d 574 (1965), is not on point. The conveyance there was a gift, and the Ohio court, while giving the grantor part of the condemnation award in that situation, went on to say that where the grantee had paid the grantor the full value of the determinable fee, as apparently was the case here, "giving the grantor any part of the eminent domain award would represent a windfall to the grantor." *Id.* at 55, 212 N.E. 2d at 577. The case of *State v. Independence School Dist. No. 31,* 266 Minn. 85, 123 N.W. 2d 121 (1963), on the other hand, supports the position of the Diocese. The Minnesota court, while recognizing that the weight of authority was otherwise, decided that "[i]n all cases . . . some amount, however nominal, should be allowed to the owner of a possibility of reverter when his interest is extinguished by condemnation," *id.* at 95-96, 123 N.W. 2d at 129, and that where the fair market value of the highest and best use was higher than the restricted use value, the owner of the possibility of reverter was entitled to the difference between those values.

We reject the reasoning of the Minnesota court, and adopt the rule stated in the Restatement of Property and in accord with the majority of other jurisdictions, that where no intention to abandon the restricted use is shown, the owner of the fee is entitled to the entire condemnation award.

Affirmed.

Judges CLARK and ERWIN concur.